THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LEE C. HARVEY, Plaintiff in Error.

*Opinion filed April 23, 1926—Rehearing denied June 4, 1926.*

1. CRIMINAL LAW—*when conviction may be had on testimony of an accomplice.* The testimony of an accomplice is admissible against one accused of crime, and a conviction upon such testimony may be sustained if it is of such character as to prove the guilt of the accused beyond a reasonable doubt.

2. SAME—*testimony of accomplice should be received with caution.* The testimony of an accomplice is subject to grave suspicion and should be acted upon with great caution, and in weighing such testimony it is necessary to consider the influence under which it is given and whether the purpose of the witness is to shield himself from punishment, to obtain some benefit for himself or to gratify his malice.

3. SAME—*when conviction is not sustained by evidence.* Conviction of participation in a bank robbery will be reversed on the evidence where it rests entirely upon the testimony of a self-confessed accomplice who is contradicted by his own associates in the crime while the defendant's testimony as to his innocence is corroborated by other witnesses, as the record in such case does not establish the guilt of the defendant beyond a reasonable doubt.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

J. W. TEMPLEMAN, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, H. E. FULLENWIDER, State's Attorney, and MERRILL F. WEHMHOFF, for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error was convicted of the crime of robbery and sentenced to imprisonment in the Southern Illinois Penitentiary. He seeks to reverse the judgment on the ground

that the evidence does not establish his guilt beyond a reasonable doubt.

About one o'clock in the afternoon of September 3, 1924, the Jefferson State Bank of Springfield was entered by four armed bandits, who took about $18,000 in money. Fred Cullen, Charles Standridge, George Musick and Gene Holloran were the four men who entered the bank. William DeWitt was on watch in front of the bank and Hollis Byron was seated in a Lexington touring car at the rear. Plaintiff in error did not participate in the robbery, but it is claimed that he advised and encouraged the six bandits who did.

The conviction of plaintiff in error rests on the testimony of Fred Cullen, who tells this story: My home is in Granite City. I met Harvey at his roadhouse south of Springfield August 30, 1924. I was introduced to him by Standridge, whom I had met a week before. When Standridge introduced me to Harvey he said, "This is the friend I was telling you about." I asked Harvey about the Jefferson State Bank and the North Side Bank. We discussed robbing these banks, and I told Harvey that we would commit the robbery the following Tuesday morning and give him ten per cent of the amount obtained. I was at Harvey's on Monday and told him to expect me the next day. We drove to Granite City and did not return until Wednesday, September 3. We came in three touring cars,—a Ford, an Essex and a Lexington. I drove the Essex. DeWitt and my wife rode with me. Standridge and Byron were in the Lexington and Musick and Holloran in the Ford. We stopped at Harvey's about 12:30. We left the Essex and the Ford in Harvey's yard, between his house and garage. We put all the guns in the Lexington and the six of us rode in it to the bank. After we had robbed the bank we returned to Harvey's. Byron, who was at the wheel, drove seventy miles an hour. We went into a bed-room at Harvey's and divided the money. I got $2755 and the

others got about the same. There was $600 or $700 in coin, and this was left on the bed for Harvey. Some of it was rolled in paper. We also left for him $270 in currency. He was not there that day. After we had divided the money we started for Granite City. About two miles from Harvey's we burned the Lexington and proceeded to Granite City in the other cars. Holloran, Musick, my wife and I were in the Ford. About two miles south of Harvey's we met a Lincoln touring car and I recognized those in the car as Springfield police officers. We were going south and the Lincoln was going north. We reached Granite City about 5:30 that afternoon and went to Stemmer's roadhouse, about three miles out in the country. Two days later I saw Harvey in the Mayes Hotel, in St. Louis, about 8:30 P. M. He complained that we did not leave ten per cent of the loot for him, and I told him to come up to Stemmer's roadhouse and we would fix it up. He said he had another job in Sangamon county for us to pull if we got this matter straightened out.

At the preliminary hearing Cullen had testified that Standridge was the one who had the conversation with Harvey regarding the Springfield banks and that it was he who agreed to give Harvey ten per cent of the amount obtained. He explained then that Standridge did the talking to Harvey because he was acquainted with him and witness was not. He also testified that he did not see Harvey from the time this conversation was held on Saturday until after the bank robbery.

Plaintiff in error testified that he lived about four and one-half miles southwest of Springfield; that he had lived in and near Springfield for many years; that he is fifty-four years of age, married, and lives with his wife; that for four years he has been unable to walk except with the aid of crutches; that he conducts a roadhouse, which is located between the Sixth street road and the Chatham road,—two concrete roads running south from Springfield;

that Standridge and Cullen were at his place Saturday, August 30; that he was acquainted with Standridge but had no conversation about a bank robbery on that day or any other day; that he was in Springfield all day September 3, 1924; that he drove his car to town about nine o'clock and went to Tipsword's soft drink parlor, near the Wabash depot, and remained there until noon; that he went to Hillmer's garage at noon and had his car repaired; that he returned to Tipsword's about one o'clock and played rum all afternoon; that about 1:30 a switchman named Miller came into Tipsword's place and reported that the Jefferson State Bank had been robbed; that he did not receive any of the proceeds of this robbery nor did he have any conversation with Cullen regarding a split of the proceeds.

Lee Tipsword testified that Harvey was in his place from ten o'clock in the morning until four o'clock in the afternoon; that he was playing rum; that a switchman named Miller came into his place while Harvey was there and reported the robbery of the Jefferson State Bank.

T. E. Miller testified that he was a switchman employed by the Wabash Railroad Company on September 3, 1924; that he was in Tipsword's place shortly after noon; that he saw Harvey there, playing rum, and that he told those present about the Jefferson State Bank robbery.

James Brown testified that he adjusted the tappets of Harvey's automobile at noon, September 3, 1924.

William DeWitt testified that he participated in the robbery of the Jefferson State Bank; that he was arrested and indicted for the crime and that he pleaded guilty. After reciting the details of the robbery he testified that the robbers entered the Lexington automobile and drove south out of Springfield about seven miles to a side road, where they had left the Essex and the Ford automobiles in charge of Cullen's wife; that they saturated the Lexington car with gasoline and set it afire; that they drove to Stemmer's roadhouse at Horseshoe lake, near Granite City, in the Ford and

the Essex cars and there divided the money; that Cullen carried the money with him in the Ford; that they did not stop at Harvey's roadhouse before the robbery; that they did not leave the cars there; that they did not return there after the robbery; that they did not split the money there; that he did not know Harvey, and that Harvey had no connection whatever with the robbery. Some time after his arrest he had signed a written confession in which he stated that the robbers drove from the bank to Harvey's roadhouse, where they split the money.

Charles Standridge testified that he was with Cullen at Harvey's roadhouse on the Saturday preceding the robbery; that nothing was said during that visit regarding a plan to rob the Jefferson State Bank nor was a conversation had with Harvey on the subject at any time.

Joseph Shipley testified that he delivered a load of coke to Harvey's roadhouse about the 6th of September, 1924, and that Harvey paid him $20 in half dollars; that later he delivered a load of coal and was paid $16 in smaller coins, which were rolled in coin wrappers.

George Ford testified that he leased to Harvey two slot-machines; that he checked the machines September 5; that he sold Harvey nickels and quarters to use in the machines; that the nickels and quarters were in coin wrappers such as bankers use; that he furnished Harvey some of his wrappers which he got from the Ridgely Bank; that the wrappers were for money of different denominations.

R. W. Hillmer testified that he placed an electric piano in Harvey's roadhouse and that Harvey operated it for twenty-five per cent of the receipts; that Ed Nelch, who worked for him, was at Harvey's September 3 and took from the piano $20.25 in nickels; that Harvey kept the nickels and gave Nelch other money; that he furnished Harvey coin wrappers which he got from the North Side State Bank so that he could wrap the nickels taken from the piano.

As soon as the robbery was reported police officers rushed to the scene in automobiles. Those in a Lincoln touring car started from the bank immediately in pursuit of the robbers and other officers followed shortly thereafter in a Studebaker sedan. One officer who rode in the Lincoln testified that they passed Harvey's place at the rate of seventy-five or eighty miles an hour and he does not remember passing a car near Harvey's. The officers in the Studebaker stopped at Harvey's place and talked to his wife, who was in the yard. Harvey was not there. The officers did not search the house. The only automobile about the premises was an old Ford car in the back yard.

George P. Schaffer, a lineman employed by the Illinois Bell Telephone Company, was superintending the re-building of a telephone line along the public highway near Harvey's roadhouse. Shortly after one o'clock a touring car passed him at the rate of more than fifty miles an hour. The speed of the car and the noise of the motor attracted his attention. Within fifteen minutes another touring car passed, going between fifty and seventy miles an hour. Neither of these cars stopped at Harvey's. Joseph Messersmith, who was working with Schaffer, saw the two automobiles pass about fifteen minutes apart, each of them going faster than fifty miles an hour. He was digging a post-hole when the first car passed and did not notice it until it had passed him, so that he did not recognize the make. The second car he recognized as a Lincoln. Neither of these cars stopped at Harvey's. About fifteen minutes after the Lincoln car passed, a large sedan drove up to Harvey's and stopped.

Aside from the circumstance of Harvey's paying his coal bill with coins rolled in wrappers, which circumstance is explained by Harvey and two other witnesses, the only testimony in the record connecting Harvey in any way with this robbery is that of Cullen, a self-confessed thief. The testimony of an accomplice is admissible against one accused

of crime, and a conviction upon such testimony may be sustained if it is of such character as to prove, beyond a reasonable doubt, the guilt of the accused. (*People* v. *Andrae,* 295 Ill. 445; *Collins* v. *People,* 98 id. 584; *Gray* v. *People,* 26 id. 344.) It is, however, uniformly held that the testimony of an accomplice is subject to grave suspicion and should be acted upon with great caution. In weighing the testimony it is necessary to consider the influence under which the testimony is given and whether the purpose of the witness is to shield himself from punishment, to obtain some benefit for himself or to gratify his malice. (*People* v. *Johnson,* 314 Ill. 486; *People* v. *Pattin,* 290 id. 542.) If such tainted testimony were not regarded with great caution, the life or liberty of the best citizen might be taken away on the accusation of the real culprit, made either to shield himself from punishment or to gratify his malice. *People* v. *Fritz,* 320 Ill. 323; *Hoyt* v. *People,* 140 id. 588.

Cullen says that Harvey advised and encouraged him and his associates to commit this robbery and Harvey denies any knowledge of the plan. Cullen is under indictment for this crime and at the time of the trial had not pleaded to the indictment. He was as interested in the result as Harvey. His testimony on the trial was not in harmony with that which he gave on the preliminary hearing. Under the circumstances his testimony is not entitled to any more credit than Harvey's, but the jury saw and heard both of these witnesses testify, and if the question was which of these two interested persons is entitled to the more credit we would not disturb the jury's verdict. In addition to Harvey's denial of guilt, two of Cullen's associates testify positively that Harvey was not in any way connected with this crime. Cullen's story of splitting the loot at Harvey's place is so unreasonable that it is not convincing. Furthermore, it can not be true if we are to believe the testimony of the police officers who pursued the robbers and of the linemen who

saw the robbers race by with the officers in close pursuit. The evidence in this record does not establish the guilt of plaintiff in error beyond a reasonable doubt.

The judgment is reversed and the cause is remanded to the circuit court of Sangamon county.

*Reversed and remanded.*