(No. 18104.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* OLIVER LINDSEY, Plaintiff in Error.

*Opinion filed June 22, 1927.*

PROHIBITION—*testimony of an accomplice should be acted upon with caution.* The testimony of one who is admittedly an accomplice is subject to grave suspicion and should be acted upon with great caution, and where conviction rests alone on such testimony, which is uncorroborated and is contradicted by unimpeached witnesses while the testimony of the defendant is corroborated by disinterested witnesses, it cannot be said that the evidence establishes guilt beyond a reasonable doubt.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the County Court of Morgan county; the Hon. PAUL SAMUELL, Judge, presiding.

EDWARD PREE, and RUSSELL F. MEYER, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, HUGH GREEN, State's Attorney, and MERRILL F. WEHMHOFF, for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Oliver Lindsey, was convicted in the county court of Morgan county of the offense of unlawfully owning a still and was sentenced to imprisonment at the Illinois State farm for a term of six months. The judgment was affirmed by the Appellate Court for the Third District, and the record is here for further review on writ of error.

February 28, 1925, two of the sheriff's deputies searched the premises of George Willerton, located northeast of Sinclair, in Morgan county, and in the basement of the house

found a still, a large quantity of mash, and some distilled liquor commonly called "white mule." Willerton told the officers that plaintiff in error was the owner of the still, and thereupon the latter was arrested and brought to trial.

The conviction in this case rests upon the testimony of Willerton, a confessed violator of law. According to his story Lindsey and his son-in-law, Edward McCarty, called at his farm home in November, 1924. He was working for a neighbor, Crit Henline, at the time, and McCarty came after him and drove him back to his house, where he found Lindsey waiting. He had never seen Lindsey before. Lindsey introduced himself and asked whether he had any geese to sell. Willerton replied that he did not have any, and Lindsey then asked him to step around the house so that he could talk to him in private. They left McCarty and Lawrence Martin, a young man who lived with the Willertons, at Lindsey's automobile and went around the house alone. Lindsey asked Willerton whether he would like to make some whiskey, and Willerton said that he did not know how. Lindsey said that if he would let him bring his still and put it in Willerton's basement he would put a man in charge of it and furnish all the materials and pay Willerton one dollar a gallon for all the liquor distilled. They talked for about two hours and Willerton finally agreed to the plan. Lindsey and McCarty took Willerton back to Henline's. About two weeks later Lindsey brought the still to Willerton during the night and it was installed in Willerton's basement. Rube Lair was employed by Lindsey to operate the still. Lindsey called frequently to bring supplies and to take away the liquor. About 134 gallons were distilled and Lindsey paid Willerton a total of $70. On two occasions he paid in cash, $22 one time and $15 another. He sold Willerton a roll of woven wire fence for $15 and paid to a Mr. Anderson $18 which Willerton owed him. During the trial Willerton took the stand three times and each time made his story stronger.

The only corroboration of Willerton's testimony is the testimony of his wife and of Martin. The former says that she saw Lindsey driving away from the farm on two occasions between November and February, but that she did not speak to him on either occasion and did not know at the time that there was a still in the basement of her home. Martin says that he was at Willerton's when Lindsey and McCarty arrived, and while McCarty was gone after Willerton he talked with Lindsey; that upon Willerton's arrival he (Martin) went into the house for his gun to go hunting; that as he passed a window, which was partly open, he heard Lindsey say something about bringing a still to Willerton's; that he took his gun and went hunting; that when he returned Lindsey was still talking to Willerton; that he went to the station to meet Mrs. Willerton, and just as they arrived home Willerton, McCarty and Lindsey drove away in Lindsey's automobile.

Plaintiff in error testified that he is a farmer, is married, and lives on a farm about three miles southeast of Literberry, in Morgan county, and that Willerton's farm is about seven miles southeast of his. In November, 1924, his son-in-law was looking for some hogs to butcher and was told by a Mr. Anderson that Willerton had some for sale. He and his son-in-law were not acquainted with Willerton but they went to his farm to see him about buying his hogs. When they arrived they found Martin at the farm and he told them that Willerton was working at Henline's farm. McCarty went to Henline's to get Willerton and brought him home. Lindsey introduced himself and the three men went to the hog lot. The hogs were found to be unsuitable for butchering, so they took Willerton back to Henline's and then went home. He did not discuss with Willerton the proposition of installing a still in the latter's basement. He did not deliver a still to Willerton's home and was not at Willerton's home at any time before or after the time he went there to buy hogs. He was not con-

nected with the distilling of liquor on Willerton's place and had no interest in any still operated there.

McCarty says that Lindsey went with him to see Willerton about buying some hogs and that that was the only matter discussed with Willerton; that nothing was said about a still or the manufacture of whiskey. Henline testifies that he has lived on his farm about thirty-five years; that November 25, 1924, Willerton was helping him build a garage; that McCarty called for Willerton about one o'clock and told him he wanted to look at his hogs; that Willerton left with McCarty, was gone about two hours, after which he returned and worked the rest of the day.

Willerton's testimony is substantially uncorroborated. On the other hand, it is inherently improbable and is contradicted by the testimony of three unimpeached witnesses. Lindsey is the accused and is directly interested in the result of the prosecution, but his story is reasonable and is corroborated by other testimony in the record. Henline is entirely disinterested, and he says that McCarty came to see Willerton about buying some hogs and not about buying geese. Willerton did not accuse Lindsey of violating the law until he was caught in possession of a still, nine barrels of mash and several gallons of distilled liquor. There is nothing in the record to indicate that he is testifying to vindicate the law and preserve the good order of society. Every indication is that his testimony is prompted by the desire to save himself from the punishment he so well deserves. If such tainted testimony were not acted upon with the utmost caution the liberty of the best citizen in the State might be taken away on the accusation of the real culprit. We have held repeatedly that the testimony of one who is admittedly an accomplice is subject to grave suspicion and should be acted upon with great caution. (*People* v. *Harvey,* 321 Ill. 361; *People* v. *Fritz,* 320 id. 323; *People* v. *Johnson,* 314 id. 486; *People* v. *Fox,* 269 id. 300; *Cohn* v. *People,* 197 id. 482.) The evidence in

this record does not establish the guilt of plaintiff in error beyond a reasonable doubt.

The judgments of the Appellate Court and of the county court are reversed and the cause is remanded to the county court of Morgan county for a new trial.

*Reversed and remanded.*