(No. 18938.— ▮▮▮▮▮)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* OTHO BORING *et al.* Plaintiffs in Error.

*Opinion filed April 20, 1929.*

EDWARD PREE, and RUSSELL F. MEYER, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, H. E. FUL-LENWIDER, State's Attorney, and ROY D. JOHNSON, (J. M. WELDON, and L. E. SULLIVAN, of counsel,) for the People.

Mr. COMMISSIONER CROW reported this opinion:

Plaintiffs in error, Otho Boring, James Gilliland and Philip Smith, were charged in an indictment filed in the circuit court of Sangamon county with the crime of robbery while armed with a gun. A plea of not guilty was entered, and the case was tried by a jury at the same term of court at which the indictment was returned. The defendants were found guilty in manner and form as charged in the indictment. Motions for a new trial and in arrest of judgment were overruled and they were sentenced to imprisonment in the penitentiary until discharged according to law. They bring the record to this court by writ of error to reverse the judgment of conviction.

The scene of the crime was the barbecue stand of Cress Maddox, located on the hard road in Sangamon county east of Springfield. The robbery was committed shortly before one o'clock in the morning of Monday, September 12, 1927. Maddox, the proprietor of the place, testified that plaintiffs in error Smith and Gilliland entered his place of business and ordered something to eat; that about five minutes later the other plaintiff in error, Otho Boring, accompanied by Victor Morgan, entered the place, armed with guns, and ordered all persons to put up their hands and go back into the kitchen; that Morgan commanded Smith and Gilliland to help search the place and the people who were there; that Boring took from the cash register $15.35 and a gun from under a pillow in the bed-room; that Smith took from witness $11 which was in his pocket; that Gilliland took from Ray Sayre, a patron of the place, a watch; that Chester Esch, who was in the place, was searched, but witness could not see what was taken from him; that the

four men left his place together; that they were unmasked and the place was well lighted at the time of the robbery. He further testified that he saw two of the men, Boring and Smith, at Decatur, in the police station, at noon of the day of the robbery, and saw the other two, Morgan and Gilliland, at the county jail in Springfield that evening, and they were the persons who committed the robbery, and at the police station in Decatur he also saw his revolver that was taken from him by these men and identified it by its number.

Ray Sayre, a witness for the People, testified that he and Chester Esch went to Maddox's place about 12:45 o'clock A. M., September 12, 1927, and that they were there at the time of the robbery; that Smith entered the place just ahead of him and Gilliland entered shortly after; that while Smith and Gilliland were seated at a table Esch asked Smith if he wasn't from Decatur, to which Smith replied, no; that witness knew Smith by seeing him at dances and pool-rooms in Decatur; that shortly thereafter Boring and Morgan entered; that he had also seen Morgan at Decatur in a pool-room and knew him by the name of Vic; that during the hold-up Smith searched witness and took his watch and chain, some money, his bank book, card case and check book; that the four men left the place at the same time; that the morning of the robbery he went to Decatur with sheriff Kent and saw Morgan, Smith, Boring and Gilliland, whom he identified as the four men who were at Maddox's place early that morning and committed the robbery; that he also saw his watch at the police station in Decatur, which had been taken from him by Smith on the previous night.

Chester Esch, another witness for the People, testified that he and Ray Sayre went to Maddox's place in the early morning of September 12, 1927; that he and Sayre entered the place about the same time as Smith and Gilliland; that he recognized Smith, having previously seen him in

Decatur at skating rinks and pool-rooms; that he asked Smith if he wasn't from Decatur, to which he replied, no; that shortly after this conversation two other men entered the place, armed with guns, and commanded the people in the place to hold up their hands; that as soon as the two men entered he recognized one of them as Morgan, whom he had known personally in Decatur; that one of the men searched him and took four dollars in bills and some change from his pocket; that he saw the men take the money from the cash register and search the other people in the place; that he went with the sheriff of Sangamon county to Decatur that morning and saw Morgan and plaintiffs in error there, and identified them as the men who robbed Maddox's place.

James Kent, sheriff of Sangamon county, received information of the robbery and went to Decatur that morning, taking with him two deputy sheriffs and Ray Sayre and Chester Esch. He first went to the police station in Decatur and from there to a pool-room to ascertain who the man "Vic" was. When he received that information he went to the police station and from there to the house where Victor Morgan resided. He found Morgan at the house and searched the house and found in the drop-head of a sewing machine Maddox's gun and Sayre's watch, together with two revolvers and a shot-gun. When he took Morgan to the police station Smith was there. Later he went to the home of Boring and brought him and Gilliland to the police station in Decatur and then took them to the Sangamon county jail and locked them up.

Victor Morgan, a witness for the State, testified that he entered a plea of guilty to the charge of robbing Maddox's place in the early morning of September 12, 1927; that he had known Boring, Gilliland and Smith for some time in Decatur; that he met them early in the evening of September 11, 1927, in Decatur, and that the four drove to Springfield in a Moon car, which belonged to Gilliland;

that after arriving in Springfield he and Boring stole a Ford touring car; that after they got the Ford car they met Gilliland and Smith at Bergen Park; that they then drove about a mile east of the city in the two cars and left Gilliland's Moon car in a cornfield; that they all got in the stolen Ford car and started back toward Springfield; that while going to Springfield, Boring and Gilliland said there was supposed to be $500 at the Mid-Iron Barbecue—Maddox's place; that they drove by the place several times before they entered; that Smith and Gilliland went into the place first, and he and Boring, armed with guns, entered shortly thereafter; that they searched the people in the place and took a watch and gun and some money; that after the robbery they drove back to Gilliland's car in the cornfield and there divided the money, each getting $6.75, and he took the gun and watch which were taken from the place; that they left the stolen Ford car in the field and rode back to Decatur in Gilliland's car, and that he was arrested by sheriff Kent in Decatur the same day.

Plaintiff in error Smith did not testify at the trial and called only one witness in his behalf—Alfred Sarver, night clerk at the Y. M. C. A. Hotel at Decatur, who testified that Smith had registered at the hotel about 12:15 o'clock A. M., September 12, 1927. Plaintiffs in error Boring and Gilliland called as witnesses in their own behalf C. P. Adams, father-in-law of Boring, Mrs. C. P. Adams, his mother-in-law, Mrs. Otho Boring, wife of Boring, and Mrs. Ora Hyde, a friend of the Borings. Their testimony was in support of an alibi. If their account of the acts and conduct of Boring and Gilliland is true they were in Decatur when the robbery was committed, and, of course, could not have actively participated in it, as the witnesses for the prosecution testified.

As to Smith, his identification as one of the participants in the robbery is complete. One of the witnesses for the prosecution knew Smith when he came into Maddox's place

and asked him if he was not from Decatur, and he said, no. That he was from Decatur and that he was the identical Smith chàrged with participation in the crime is not open to doubt.

As to the alibis of Boring and Gilliland, if the testimony of the witnesses for the People is true they were at the scene of the crime when it was committed. The identification of Boring and Gilliland by these witnesses was complete. There is no motive disclosed by the record for accusing them of the crime other than that they were active participants in its commission. When they entered the place the witnesses had no occasion to regard them other than as legitimate patrons. The testimony shows that it was Gilliland's car,—a Moon,—in which Gilliland, Boring, Smith and Morgan drove from Decatur to Springfield. Upon arriving there, Boring and Morgan stole a Ford touring car and then met Gilliland and Smith at Bergen Park. The two cars were driven to a cornfield, where the Moon was concealed and the Ford used in driving to and from the scene of the crime. The Moon car was driven back to Decatur after the commission of the crime and the Ford left in the cornfield. The evidence in the record cannot be considered without reaching the conclusion that the Moon car was concealed because it would, or might, attract more attention in the pursuit and identification of the criminals than the Ford.

It is contended that the verdict rests upon the testimony of Morgan, an accomplice, and therefore the judgment of conviction should be reversed. Morgan entered a plea of guilty to the charge. His testimony is corroborated by all present when the robbery occurred. The case of *People* v. *Lindsey,* 326 Ill. 212, is relied on as authority in support of the contention for reversal. That was a prosecution for the offense of unlawfully owning a still. It was said in the part of the opinion quoted in the brief: "Every indication is that his testimony is prompted by the desire to

save himself from the punishment he so well deserves. If such tainted testimony were not acted upon with the utmost caution the liberty of the best citizen in the State might be taken away on the accusation of the real culprit. We have held repeatedly that the testimony of one who is admittedly an accomplice is subject to grave suspicion and should be acted upon with great caution." But there is no analogy between that case and this. The testimony of Morgan is corroborated by every circumstance in the record. He could not save himself from punishment by testifying to the fact of robbery in all of its details.

The identity of the defendants as those present at the robbery and participating in it is clear. It was so complete that within a few hours after the offense every participant had been apprehended. A careful consideration of all the evidence in the record, including that of the alibi, leaves no room for doubt of the guilt of the defendants. The evidence of guilt does not consist of the testimony of an accomplice, as seems to be contended, but of the testimony of witnesses to the facts constituting guilt, corroborated by an accomplice.

The criticism of the instruction given on behalf of the prosecution is not well made. It could not have misled the jury.

The evidence abundantly sustains the verdict, and no harmful error having intervened, the judgment of conviction is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*