(No. 20655.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LESTER BUGG, Plaintiff in Error.

*Opinion filed June 18, 1931.*

THOMAS F. SMITH, (HENRY F. TURNER, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, MYRON MILLS, State's Attorney, and J. J. NEIGER, for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

The grand jury at the October term, 1930, of the circuit court of Cass county indicted plaintiff in error for the stealing of seventeen head of hogs of the value of $200, the property of Walker Thornley. The same grand jury also indicted, in a separate indictment, Alef Boatman for stealing the same hogs at the same time. Boatman fled from the State of Illinois after the larceny and was arrested in Fall City, Nebraska, and was returned to Cass county by extradition. The hogs were stolen from the pasture of Thornley, who resided about four miles north of Ashland, in Cass county, on the night of June 10, 1930. Plaintiff in error came from Kentucky to this State about two and a half years prior to his arrest on October 14, 1930, and was engaged in conducting lunch rooms and filling stations at Ashland and Virginia, Illinois. A trial was had and the jury returned a verdict on October 17, 1930, finding plaintiff in error guilty of larceny as charged in the indictment and his age to be twenty-six years. Motions for a new trial and in arrest of judgment were overruled by the court and judgment was entered on the verdict sentencing Bugg to the Southern Illinois Penitentiary. He has sued out this writ of error to review the record.

The proof for the People is principally the testimony of Alef Boatman, who had been working for Bugg for about a month at the filling station in Ashland at the time of the alleged larceny. He testified that somewhere between 11:00 and 12:00 o'clock on the night of June 10, 1930, he and Bugg drove out to the farm of Thornley, found the hogs

in the pasture, drove them into a lot and with a chute they found there loaded them in Bugg's truck; that they drove the loaded truck to Peoria, arriving at the stock yards next morning between 8:30 and 9:00 o'clock; that they decided to sell the hogs to C. A. Pierson & Co. at the stock yards, and Bugg went in and got the check from Pierson & Co. for $286.58 for the hogs; that Bugg took the check to a bank, endorsed it with the name "A. R. Stephenson," in whose name the hogs were sold to the commission firm, and received the money. Boatman testified he received $150, which was more than his share of what the hogs were worth, but part of it was for work he had done for Bugg. He testified he had seen Bugg write letters and sign bills and that to the best of his knowledge he would know Bugg's handwriting. He was shown the check given by C. A. Pierson & Co. payable to A. R. Stephenson, and said the signature "Stephenson" on the back was the handwriting of Bugg. He testified he had been indicted for the same theft and had not yet pleaded to the indictment. He testified that he bought some furniture and brought it back in the truck to Ashland; that the truck was a Graham Bros. truck and belonged to Bugg; that he and Bugg had talked about going after hogs of different farmers, as they both needed some money, and they decided that Thornley's would be the easiest place to load and he had good hogs; that he never told anyone about the theft of the hogs until he was brought back from Nebraska; that he talked to the sheriff of Cass county, and to Reynolds, a deputy sheriff, after he was brought back to this State, and he also talked to the State's attorney about it. He stated that the case against him had not been disposed of, that he knew of; that he had no promises made to him that the case would go easy with him or immunity would be granted him by the State. He testified that he did not know whether he first suggested on the morning of the 10th of June that they steal Thornley's hogs; that he never saw Bugg write the name "A. R.

Stephenson" on the back of the check, but that the writing resembled Bugg's handwriting and to the best of his knowledge it was his. He said Bugg told him that the hogs were sold under the name "A. R. Stephenson." The sheriff of Cass county testified he obtained the canceled check made payable to A. R. Stephenson by Pierson & Co. for the hogs sold to that company, and that the check was in the same condition it was when he obtained it from the Pierson company. Boatman was re-called and testified he told plaintiff in error in jail that he had signed a statement that he and Bugg had taken the hogs and that they had the goods on them, and that plaintiff in error said if they had the goods on them they would have to own up to it. That conversation occurred, Boatman said, the first evening they were in jail together, but he could not give the date.

Plaintiff in error took the witness stand in his own behalf and positively denied having anything to do with taking the hogs of Thornley or taking them to Peoria and selling them and receiving the money for them. He said he was raised in Kentucky and had lived in Illinois about two and a half years; that he sold out his business in July, 1930; that on June 10 and 11 he was engaged in the lunch room and filling station business in Ashland; that he was in the filling station the 10th day of June, 1930, and stayed there day and night; that he slept there and took his meals there; that between 10:30 and 11:00 o'clock the night of June 10 he was at the filling station and lunch room and did not leave; that he did not on the morning of June 10 have a talk with Alef Boatman about taking Thornley's hogs or any other hogs; that he did not go to Peoria on June 11 and had nothing to do with the larceny of the hogs. He denied the conversation Boatman testified to about the latter having made a confession and that they had the goods on them, and said he did not reply to Boatman that "if they have, then we just as well own up to it." He testified he asked Boatman when Boatman told him of

making a confession implicating plaintiff in error why he put plaintiff in error's name into it, and Boatman replied that they promised to let him off if he did; that if he would plead guilty and implicate plaintiff in error or someone else they would make it lighter for him. He testified Boatman said the Burns Detective Agency or the Prairie Farmer Detective Agency made that promise in the presence of Reynolds. Plaintiff in error further testified that he worked in the filling station and lunch room at Ashland on the 11th day of June, 1930, and that he did not leave town that day.

J. S. Barker testified he was then living in Peoria; that until the 9th day of July he was connected with the Lincoln Oil Refining Company at Ashland; that he was manager of the bulk company there and was connected with it from the first of April to the ninth of July, 1930, and would be at the plant or the filling station and restaurant conducted by plaintiff in error every day and would stay as late as 8:00 or 8:30 o'clock at night, and occasionally later. He saw plaintiff in error at the filling station the 9th, 10th and 11th of June. He had nothing to call particular attention to those dates but could not recall a time when Bugg was away from there. He said he saw Bugg at his place of business in Ashland on the 9th, 10th and 11th, and that he went to the restaurant and filling station every morning and saw Bugg there every day to his knowledge. He could not recall the exact date after the 9th of July he sold out. He could not state whether he stayed at Bugg's filling station or restaurant June 10 all day or not, and he might have made a trip of a mile or so in the country but was not away from the filling station a couple or three hours at a time. He would not say positively he was at the filling station on the 10th of June at 10:00 o'clock. He went to the filling station every day in the month of June. He had no independent recollection of the 11th of June, and

he never missed Bugg at the station or restaurant at any time in the morning of June 11.

Emma Barker, wife of J. S. Barker, testified she knew where the filling station and restaurant of plaintiff in error were; that she visited there during the month of June; that it was hard to recall the date of June 10 but she thought she was there then; that she got there about 6:30 or 7:00 in the evening and stayed until around 10:00 o'clock—sometimes later—and always saw Bugg there; that she had no independent recollection of the evenings of June 10 and 11 but that she must have been there the 10th and 11th and that she saw plaintiff in error there; that he was working in the lunch room; that it could not be possible that she missed two nights in succession being there, and she did not think she missed the date of June 11.

In rebuttal the People called Harold Boatman, a brother of Alef Boatman. He testified he visited plaintiff in error's filling station in Ashland during the day of June 11 and saw him late in the afternoon. Witness went to the filling station about 10:00 or 11:00 o'clock in the morning. He said Bugg and Alef Boatman came there in a truck about 5:00 o'clock in the afternoon, and they had furniture on the truck. Witness said he saw Barker there that day, and that Barker stayed around the filling station all day.

It was stipulated that the witness Harold Boatman had been indicted by the grand jury of Morgan county upon a charge of grand larceny and had pleaded guilty to the indictment or was found guilty by a jury; that judgment of conviction had been pronounced upon him and he was sentenced to the State Reformatory at Pontiac, and that at the time he testified as a witness for the People he was at liberty on parole.

It will be observed that there was really no evidence of guilt except the uncorroborated testimony of Alef Boatman. It is competent to sustain a conviction on the testimony of an accomplice where such evidence proves guilt beyond a

reasonable doubt, but it is also the law that the testimony of an accomplice should be acted upon with great caution. (*People* v. *Harvey*, 321 Ill. 361; *People* v. *McKinney*, 267 id. 454; *People* v. *Rosenberg*, id. 202.) A conviction on the uncorroborated testimony of an accomplice should not be sustained unless it warrants the jury in finding the accused guilty beyond a reasonable doubt. (*People* v. *Rongetti*, 338 Ill. 56; *People* v. *Elmore*, 318 id. 276.) There is really no corroboration of Boatman's story unless it be the testimony of his brother, Harold, and we do not regard that as fairly tending to corroborate Alef. Besides, his testimony was weakened by the fact that he had been convicted of larceny, sentenced to the reformatory at Pontiac and was out on parole. Alef was a confessed thief and admitted he was engaged in stealing the Thornley hogs. He had not pleaded to the indictment returned against himself at the time he testified, and plaintiff in error testified Alef told him he had confessed that he and Bugg stole the hogs, and the latter wanted to know why he connected him with it, and Alef said he had been given a promise it would go lighter with him if he would. In *People* v. *Temple*, 295 Ill. 463, the court said: "It needs no power of divination to comprehend the fact that there was some sort of understanding, expressed or implied, or a reasonable expectation, that Craig would be benefited by giving testimony which would convict Temple, which was the only purpose of his examination. He had confessed the commission of the crime and at no time denied it but had pleaded not guilty." In that case the record showed Temple was sentenced to the penitentiary and Craig placed upon probation in care of his father. In *People* v. *Vehon*, 340 Ill. 511, the court said: "This court has always regarded the testimony of an accomplice with suspicion, to be acted on with great caution, especially if awaiting trial or sentence for his own crime or if corroborated only in part by the testimony of respectable witnesses." The only proof of any consequence

pertaining to plaintiff in error's guilt in this case is the testimony of Alef. No member of the firm of Pierson & Co., of Peoria, who bought the hogs, was present as a witness.

We are not satisfied with the People's proof being sufficient to establish plaintiff in error's guilt beyond a reasonable doubt in view of the very unsatisfactory evidence, which was only that of an accomplice.

The judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*