(No. 35234.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES WILLIAMS, Plaintiff in Error.

*Opinion filed March 31, 1960—Rehearing denied May 16, 1960.*

THEODORE M. SWAIN, of Chicago, for plaintiff in error.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and FRANCIS X. RILEY and EDWARD J. HLADIS, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Plaintiff in error, James Williams, hereinafter referred to as the defendant, sues out a writ of error to review judgments of guilty entered against him in each of two cases. He was charged with assault with intent to kill and for robbery while armed with a dangerous weapon, on indictments returned in the criminal court of Cook County. He was represented by the public defender of Cook County at his request, waived trial by jury, was tried by the court and found guilty as charged in both cases. His motions

for a new trial and in arrest of judgment were denied. The court sentenced the defendant to from ten years to twenty years in the penitentiary. Lacy Smith was a codefendant, in both indictments, being charged as an accessory.

Both Williams and Smith entered pleas of not guilty to all charges. Then Smith, who was also represented by the public defender, withdrew his plea of not guilty and entered a plea of guilty as to each indictment. A judgment of guilty as to the codefendant Smith was entered by the court on the plea of guilty on each indictment. The State's Attorney requested and the court agreed to withhold sentencing until after the trial of the defendant Williams.

The defendant Williams urges reversal of his conviction on three grounds, viz.: (1) the findings of guilty are unsupported by and are against the weight of the evidence; (2) the convictions are based solely on accomplice testimony, which is so contradicted and incredible as to fail to meet the established standards of credibility for accomplice testimony, and (3) the accomplice testimony is defective by failing to be corroborated in any material respect.

These contentions make it necessary for us to relate the facts adduced on trial in support of the guilty judgment. Raymond Tomczak testified that he was the operator of a gasoline service station located at 3555 West Lawrence Avenue in Chicago, and that he was assaulted on the morning of Monday, January 27, 1958, between 9:00 and 9:30 A.M.; that while he was standing with his back to the office door and repairing a tire near the grease pit located nearest the office, he heard a thump which he thought was the tire blowing up and remembered nothing more. He had been assaulted with a rubber covered mallet causing a severe head injury which required surgery and caused his hospitalization for 22 days. At the time of trial he was still unable to work. He further testified that on January 27, 1958, he had $28 in his pocket and over $400 worth of checks in an envelope under the seat of his car parked at

his station. Mrs. Tomczak testified as to her husband's head, eye, nose, mouth and forehead injuries; that the police recovered and returned his car to her on the following Thursday; that her husband had cash on the day of the assault; and that none of the stolen checks were ever recovered.

Edward J. Halle, a police officer, testified that he investigated the incident at the station at about 10:45 A.M., saw Tomczak at the hospital, viewed the injuries to his eye, head and neck, and noticed that he was not very coherent; that Tomczak's brother-in-law informed the police that Lacy Smith was employed at the station; that they located his home, but did not find him there; that on the afternoon of January 29, the brother-in-law received a phone call from Smith, who told him he wanted to give himself up and made an appointment to come to the gas station at 5:00 P.M. that day; that the police were there when he came in and took him to the police station where they questioned him; that after talking to Smith the police went to 1320 S. Peoria Street which was reported to be where they could find James Williams; he was located at that address, taken to the police station and interrogated about the crime, of which Williams denied having any knowledge.

Smith viewed a lineup of Williams and two other men and identified Williams by placing his hand on Williams's shoulder and saying "this is the man." Smith testified that while in custody the State's Attorney had promised him that if he told the truth, he would recommend probation. His testimony reveals that he worked for two months at $70 per week for Tomczak as his only employee; that he had known Williams since June, 1957, but had not seen him since November, 1957, until January 26, 1958, when they met on a Roosevelt Road bus; that he talked to Williams who asked where he could make some quick money; that he replied that he earned $70 per week, to which Williams responded by asking if his boss had a lot of money; that Smith told Williams that Tomczak went to the bank every

day about 9:00 or 10:30 and where his station was located; that the following morning, he saw Williams at the station about 9:00 or 9:30; that at that time he was fixing a tire and Tomczak was working in a squatting position behind him near a grease pit in the shop fixing a tire; that shortly after Williams walked in he heard a grunt, looked around, and saw Tomczak rolling over in the pit; that he just stood there while Williams jumped down in the pit and hit Tomczak with the rubber mallet; that he then saw Williams go through Tomczak's pocket and take his wallet, money, and keys; that Williams came up out of the pit; that he saw blood coming from Tomczak's nose and mouth. Tomczak's eyes were closed, and he appeared speechless and motionless. Smith also stated that Williams asked him which car was Tomczak's and he answered; that Williams and Smith got in and Smith drove the car to 453 Division Street; that when he entered the car he saw a brown envelope containing money and checks lying on the seat; that after they reached 453 Division Street, Williams took the keys and locked the car parking it in a housing project parking lot, where it was found by the police; that Williams said he was going to return later to take the car; that Williams gave him $190 and left, but before leaving, Williams told him that Smith could contact him at 1634 S. Spaulding; that Smith then went to 3545 S. Cottage Grove; that he kept the $190 and stayed home all day Tuesday. Smith further testified that on Wednesday, the 29th, the police came looking for him, but when he heard them say "police officers at the door" he went out the back door; that he went to 1634 S. Spaulding looking for Williams and found him there in the alley in a car with two other boys; that he asked Williams for the rest of the money so that he could return it and that he informed Williams he was turning himself in, which drew no response; that the two other boys held a gun on him and thereby forced him into a car occupied by Williams and them; that they took the $190

from him and ejected him from the car in an alley at 22nd and Kedzie at 3:30 P.M.; that he then walked to 16th Street, met a friend, borrowed fifty cents, phoned Tomczak's station, and said he was coming in and giving himself up, which he did, arriving about 5:00 P.M. The police were there and they took him to the police station and interrogated him, and he gave them the name of the defendant James Williams whom he subsequently saw on January 31st at a lineup of three people, from which he pointed out Williams, telling the police Williams was the one who committed the crime.

On cross-examination Smith stated that he didn't ask Williams to come to the station; that he was between Tomczak and the office door working on a tire at the time of the incident; that he drove the car away; that he liked Tomczak who had been good to him,; that he left the station without calling a doctor because he was scared and upset.

The defendant James Williams testified that he lived at 1320 S. Sangamon; that he never hit Tomczak nor took money from him; that he was not riding a bus with Smith Sunday night, January 26th; that he had known Smith for five months; that he was at the home of one J. W. Ward on Sunday, January 26th; that he got up at about 9:00 or 9:15 A.M. on January 27th, when J. W. Ward came over to his home at 9:15 A.M. to awaken him; that he had trouble with Smith over a girl.

Betty Jean Ward, a cousin of J. W. Ward, testified that she had tried to find J. W. Ward to bring him to court to testify, and that she had seen the defendant Williams at 9:30 or 10:00 A.M. on January 27, 1958. Ruth Riggins testified that J. W. Ward came to the home of James Williams between 8:30 and 9:00 A.M. on January 28, 1958. The trial judge concluded that Williams's alibi did not cover the time from 9:00 to 9:30 A.M. and was not convincing.

176

The testimony of an accomplice is necessarily received with great caution, but the uncorroborated testimony of an accomplice is sufficient to warrant a conviction if it satisfies the trier of fact beyond a reasonable doubt. (*People* v. *Hermens,* 5 Ill.2d 277, 285, 125 N.E.2d 500.) The discrepancies in the testimony of Tomczak and Smith as to where Smith was standing and as to the exact location of the money in the front seat of the car, and perhaps others, are trivial and inconsequential.

There does not appear the slightest justification for us to substitute our judgment for that of the trial court. He was in an excellent position to determine whether Williams or Smith was telling the truth. The record completely supports his finding that Williams was guilty as charged.

*Judgments affirmed.*