*In re* D.R.S., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v. D.R.S., Respondent-Appellant).

Fifth District    No. 5—92—0405

Opinion filed March 22, 1994.—Rehearing denied November 23, 1994.

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Charles Grace, State's Attorney, of Murphysboro (Norbert J. Goetten, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE LEWIS delivered the opinion of the court:
The minor respondent, D.R.S. (hereinafter Donald), appeals from his adjudication of delinquency for the offense of residential burglary. On January 14, 1992, the State filed a three-count petition to revoke Donald's probation and for supplemental adjudication of wardship. On February 18, 1992, Donald admitted the allegations of the possession of alcohol charge, and the trial judge found sufficient evidence on the charge of residential burglary but insufficient evidence on the charge of theft of a firearm. On appeal, Donald raises two issues: (1) whether the uncorroborated testimony of one accom-

plice witness was sufficient to prove him delinquent beyond a reasonable doubt; and (2) whether he was denied effective assistance of counsel. For reasons more fully explained below, we reverse.

We initially summarize Donald's history with the juvenile court prior to his 1992 residential burglary delinquency adjudication, because the trial judge who adjudged Donald delinquent and committed him to the Department of Corrections also presided over all but one of his prior juvenile hearings, at least those appearing in our record on appeal. (All of the various charges against Donald are contained in the same file, including two other burglaries, thefts, and criminal damage to property.) For reasons we will more fully explain in our discussion of the issues, we conclude that the trial court's involvement with Donald in prior juvenile court proceedings must be considered in our decision as to whether he was proved delinquent beyond a reasonable doubt of the offense of residential burglary.

Donald's involvement with law enforcement officials formally began in the early morning hours of November 24, 1990, when he was picked up by Carbondale police officer Brent Nausley on a curfew violation. On December 5, 1990, the State filed a petition alleging that Donald was delinquent due to the curfew violation and obstructing a peace officer. On February 11, 1991, before that petition could be heard by the court, the State filed a supplemental petition alleging two counts of aggravated assault, one count of unlawful use of weapons, and one count of possession of a firearm without the requisite firearm owner's identification card. On the same date, the court conducted a detention hearing. The trial judge found "ample evidence that it's a matter of immediate and urgent necessity that the minor be detained pending the adjudicatory hearing."

On March 11, 1991, a hearing was conducted on the original petition, charging a curfew violation and obstructing a police officer. At that hearing, Officer Nausley testified that he stopped Donald for a curfew violation at about 4:15 a.m. on November 24, 1990, when he saw the minor leaving the Corner Diner in Carbondale, Illinois. Nausley "had had several dealings with him in the past and knew he was under age to be out after curfew." Donald gave Nausley his date of birth, May 21, 1975, when asked. When Nausley told Donald that he was going to take him back home, Donald became belligerent and started threatening Nausley and other Carbondale police officers. Nausley then took Donald into custody and transported him to the Carbondale police department.

As Nausley logged an alleged marijuana pipe into evidence, Donald began making threatening statements. Nausley testified that Donald stated that his life's ambition was to kill a "pig-cop," and

that Donald said, "[P]lease hell-Satan give me the power to kill a cop, to put a bullet through his head or his skull, or through his forehead and then I'll rape his wife and children and piss on his grave."

Nausley testified on cross-examination that Donald told him that he left his home to go to the Corner Diner where his mother worked, because his older brother was beating him and because they did not have a telephone. When Donald arrived at the diner, his mother was not there because she got off work early that night. Donald's mother testified essentially the same concerning her work. At the time Nausley stopped him, Donald was walking in the direction of his family's trailer. Other than making the threatening statement to Nausley at the police station, Donald had not physically resisted arrest and had otherwise cooperated.

Based upon the evidence, the court found sufficient evidence to support the charge of the curfew violation but insufficient evidence to support the charge of obstructing a police officer. The court ordered Donald to be detained pending an adjudicatory hearing on the assault and weapons charges of the supplemental petition.

On April 8, 1991, the court conducted a hearing on the supplemental petition. The court found sufficient evidence on one count of aggravated assault, dismissed the other three counts, and ordered that Donald be continued in detention until the court could conduct a dispositional hearing.

At the dispositional hearing, the court considered social and psychological evaluations of Donald. The court stated that it was dealing with a young man with psychological and medical problems (juvenile diabetes); and the court further stated: "[Donald] doesn't want to do anything for himself except sit in this courtroom and cry and get mad at people. *** It's been almost a year and a half that Donald's been involved in this Court." The judge acknowledged that Donald's medical problems may have caused some of his aggression, but the court stated that Donald would have to straighten himself out or the court would have "no qualms whatsoever in warehousing" him. Later, the court conducted a hearing to determine the possibility of residential placement for Donald, but none was available, due to Donald's history of aggression and medical problems. The court considered Donald's statement that he was sorry for his former behavior and would be a "better person" if not sent back to the correctional institution. The court sentenced Donald to two years' probation, with various conditions, trying "to create locally as much of a structured setting" as possible.

On January 14, 1992, the State filed a petition to revoke Donald's probation and for supplemental adjudication. Count I alleged

unlawful possession of alcohol by a minor, count II alleged residential burglary, and count III alleged theft of a firearm. The unlawful possession of alcohol allegedly occurred on a different date than the residential burglary and theft of the firearm. On February 18, 1992, the court conducted the adjudicatory hearing of the January 14 petition. Donald admitted the allegations of count I, possession of alcohol by a minor.

The State called Jerry Michael Braun, who testified that he left his trailer in Carbondale, Illinois, between about 8:30 and 8:45 p.m. and returned at about 9:15 p.m. that same evening. When he returned, he saw that his back door was open and the glass in the door was broken, and that three shotguns, one rifle, a stereo receiver, and some Nintendo tapes were missing. He did not have any personal knowledge as to who entered the trailer and stole his belongings.

The State next called V.N. (hereinafter Victor), who was 16 years old at the time of the hearing. The State advised the court that Victor was a potential corespondent in the case and requested that the court grant him immunity to testify. (Ill. Rev. Stat, 1991, ch. 38, par. 106—1 (now 725 ILCS 5/106—1 (West 1992)).) The court granted Victor immunity "for all liability for which he may be prosecuted or punished as a result of any testimony or evidence he may produce."

Victor testified that between 7 and 7:30 p.m. on October 30, 1991, he was driving around with Donald and two other juveniles, in a car driven by one of the other juveniles. They rode around Carbondale about 10 to 15 minutes and discussed breaking into houses. Immediately after their conversation, they all went to a trailer off Park Street. All four went to the back door of the trailer. Victor knocked on the door while all of them stood on a porch. When no one answered, Victor unlocked the door. The prosecuting attorney then asked Victor if he had previously given a statement that it was Donald who unlocked the door. Victor admitted that he had made the prior statement "to get [himself] out of trouble."

Victor stated that after the door was unlocked, all four juveniles went inside and took three or four guns and a stereo receiver. He never saw Donald with any of the guns or any of the other items they stole. The juveniles carried the guns and other items to the car. All of the juveniles carried the items except Donald. Victor identified a .22-caliber rifle as one of the items stolen from Braun's trailer.

On cross-examination, Donald's public defender evidently tried to impeach Victor with another prior inconsistent statement:

"Q. How do you recall who was present that evening?

A. Because I was there.

Q. But didn't you originally tell Officer Burns that [a different juvenile] was there also?

A. No, I did not.

Q. I believe I have a copy."

The State objected, saying that defense counsel could impeach using appropriate methods. The trial court sustained the objection. Defense counsel went on to ask about Victor's statement to Officer Burns. Victor continued, stating that only he and the three previously named juveniles had been present during the burglary. Defense counsel asked Victor a few more questions, eliciting only a repetition of his direct examination testimony.

The State rested its case after introducing the rifle into evidence. Defense counsel did not ask for a finding in Donald's favor but immediately called Donald to testify.

Donald was 16 years old at the time of the hearing. On October 30, 1991, he was with his brother all evening. He was acquainted with all three of the other juveniles but did not consider them to be friends. He denied participating in the burglary. Donald speculated that Victor testified against him because he laughed at Victor once when someone was picking on him. On cross-examination, Donald agreed with the prosecuting attorney that "this is basically [Donald's] word against Victor's." In her closing argument, Donald's attorney stated that she did not believe that Victor's testimony should be taken as the truth, since he "in fact has been involved in all the burglaries regarding this case." However, she had not tried to impeach Victor with any prior criminal activity.

The trial court found that the State proved beyond a reasonable doubt that Donald committed the offense of residential burglary, but not the offense of theft of a firearm. At the dispositional hearing, the trial judge stated that he had spent more time on Donald's case and had given Donald more opportunities than any other juvenile that had come before him. In committing Donald to the Department of Corrections, the trial judge stated:

"You're one of the most dangerous kids I've seen over a long period of time. You have given me no choice but to send to you [sic] the Illinois Department of Corrections and I sincerely hope for a very long period of time for the protection of the persons and property of the people of this community."

On appeal, Donald admits that the testimony of a single credible witness is sufficient to uphold a conviction, even if that witness is an admitted accomplice in the crime. (*People v. Newell* (1984), 103 Ill. 2d 465, 469 N.E.2d 1375.) He argues, however, that Victor was not a credible witness because he admitted to having lied to exculpate himself and had received immunity and his testimony was totally uncorroborated. Thus, the real issue in this case is whether the

completely uncorroborated testimony of this accomplice was sufficient to prove beyond a reasonable doubt that Donald committed the offense of residential burglary. Based upon the evidence presented below and Illinois Supreme Court precedent, we find that the evidence was not sufficient.

The rule in Illinois regarding accomplice testimony dates back to at least 1861, when the supreme court held that "an accomplice alone is a competent witness, and *** if the jury, weighing the probability of his testimony, thinks him worthy of belief, a conviction supported by such testimony alone is perfectly legal." *Gray v. People* (1861), 26 Ill. 435, 439.

In a case where a defendant challenges the sufficiency of the evidence to prove him guilty beyond a reasonable doubt, the court of review is to consider all of the evidence in the light most favorable to the prosecution. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) However, accomplice testimony must be cautiously scrutinized on appeal (*People v. Ash* (1984), 102 Ill. 2d 485, 468 N.E.2d 1153) and should not be accepted unless it carries within it an "absolute conviction of its truth." (*People v. Williams* (1976), 65 Ill. 2d 258, 267, 357 N.E.2d 525, 530.) Moreover, in a case such as this, where there is absolutely no evidence whatsoever to connect the person charged with the crime except the testimony of a single accomplice, the accomplice's testimony must be scrutinized all the more cautiously. See *People v. Rendas* (1937), 366 Ill. 385, 399, 9 N.E.2d 237, 243 (and citations listed therein) (where two accomplices testified against defendant, but the supreme court reversed, saying, "For lack of material corroboration, or where the testimony of an accomplice is otherwise discredited, this court has not hesitated to reverse judgments of conviction").

While we realize that the trier of fact is in the best position to judge the credibility of the witnesses, nevertheless, we are concerned as to whether a judge can be certain beyond a reasonable doubt of the truthfulness of a witness based solely upon observation of the witness while testifying in court. The burden of judging the believability of the witness becomes even more difficult when an accomplice, an admitted criminal, is the witness. A judge and a jury are instructed that an accomplice's testimony is to be viewed with the utmost caution and suspicion. (*People v. Sullivan* (1989), 183 Ill. App. 3d 175, 538 N.E.2d 1376.) The judge and the jury then proceed to use many criteria in judging the believability of a witness, such as the manner while testifying, the reasonableness of the testimony, any motive to lie, and consistency in statements. In most cases, however, the judge and jury have corroborating testimony or physi-

cal evidence that supports their determination of the truthfulness of the witness. In the case at bar, there was no corroboration or physical evidence to support the State's witness' identification of Donald as participating in the burglary.

Is it possible, therefore, to presume a defendant to be innocent, view an admitted criminal's testimony with the utmost suspicion, and still find a defendant guilty beyond a reasonable doubt based solely upon the uncorroborated testimony of a criminal? Our research indicates that accomplice testimony is frequently the basis for conviction, but often the conviction is not upheld if absolutely no other evidence, direct or circumstantial, corroborates the accomplice testimony. Most of the cases we have found that deal with completely uncorroborated accomplice testimony have been reversed on appeal for the reason that the evidence was not sufficient to prove the defendant guilty beyond a reasonable doubt. See *People v. Ash* (1984), 102 Ill. 2d 485, 468 N.E.2d 1153; *People v. Wilson* (1977), 66 Ill. 2d 346, 362 N.E.2d 291; *People v. Rendas* (1937), 366 Ill. 385, 9 N.E.2d 237; *People v. Bugg* (1931), 344 Ill. 440, 176 N.E. 717; *People v. Hudson* (1930), 341 Ill. 187, 173 N.E. 278.

The *Wilson* case is especially pertinent, because the supreme court found not only that the accomplice was offered immunity, which weakened the effect of the accomplice's testimony, but also that the accomplice's identification of the defendant was uncorroborated. (*Wilson*, 66 Ill. 2d at 350, 362 N.E.2d at 292.) In the case *sub judice*, the accomplice was granted immunity, he was the one who unlocked the victim's door, and there was no corroboration of his identification of Donald.

Our research has found only three Illinois Supreme Court cases where the accomplice testimony was even close to being uncorroborated but yet held to be a sufficient basis upon which to convict the defendant. Two of those cases deal with situations involving sex crimes, more delicately referred to in our former cases as "infamous crimes against nature." (*Kelly v. People* (1901), 192 Ill. 119, 61 N.E. 425.) In cases involving "infamous crimes against nature," the courts are cognizant of the fact that the offenses are generally committed in secrecy. (*Honselman v. People* (1897), 168 Ill. 172, 48 N.E. 304.) Additionally, in the late 1800's and early 1900's, given the state of forensic science, physical evidence was not usually available as evidence of an "infamous crime against nature." Therefore, if the defendant was to be convicted of the "infamous crime against nature," the conviction would necessarily depend entirely upon the uncorroborated testimony of one who had been involved in the criminal act itself. In the case at bar, no such restriction existed. Indeed, Victor

testified that four juveniles were involved in the burglary, yet he was the only one besides Donald called to testify. While the State may have had very good reasons not to call either of the other juveniles to testify, the reason is not apparent from the record.

We have found only one Illinois Supreme Court case in which the defendant was convicted upon what appeared to be totally uncorroborated accomplice testimony. That case is *People v. Williams* (1960), 19 Ill. 2d 171, 166 N.E.2d 568. A closer reading of the case, however, reveals that the accomplice worked for the victim and that the defendant came to his place of work and struck the accomplice's boss with a hammer and robbed him. The accomplice panicked and left with the defendant but later called the victim's brother-in-law and turned himself in to the police. The accomplice then named the defendant, told the police where to find him, and cooperated in identifying the defendant in a lineup. Further, defendant's alibi witnesses did not cover the time period in which the robbery occurred, so it could be inferred that defendant was available to commit the robbery. The supreme court felt that the trial court, as fact finder, "was in an excellent position to determine whether [the defendant] or [the accomplice] was telling the truth." (*Williams*, 19 Ill. 2d at 176, 166 N.E.2d at 571.) The circumstances in *Williams* seem at least to corroborate the accomplice's believability.

While there are similarities between *Williams* and the case at bar, each case must turn upon its own facts. In the case at bar, Donald testified that he had an alibi for the time of the offense, and while the State may not have been under an obligation to refute the alibi, still, the alibi remained unchallenged, except for Victor's accomplice testimony. Moreover, Victor, unlike the accomplice in *Williams*, did not turn himself in to the police, did not cooperate in the investigation by identifying the respondent in a lineup, did not admit committing the offense, and apparently was involved in a number of burglaries for which dispositions may have still been pending. There was not even testimony that Donald and Victor socialized together. Therefore, the case *sub judice* is truly a case of the respondent's word against the accomplice's word, as the State pointed out in Donald's cross-examination, without any showing that Victor's testimony should be believed, other than the observation by the trial judge.

When viewed with great suspicion, the testimony of the accomplice in this case is less than convincing. He was the admitted instigator of the crime; he initially lied to the authorities to get out of trouble; he testified under a grant of immunity; he may have had other charges pending that were alluded to but not disclosed on cross-examination; and his testimony was not otherwise properly impeached. Furthermore, his version of the timing of the events

contradicted that of the victim. Braun testified that he did not leave his trailer until 8:45 p.m. at the latest. Victor's testimony was that the group started driving around and talking about committing a burglary at 7:30 p.m. at the latest. They drove around for no longer than 15 minutes before arriving at Braun's trailer. According to Victor's testimony, therefore, the group would have arrived at Braun's trailer no later than 7:45 p.m., a full hour before Braun left. We realize that a person's memory as to the timing of various events is not always exact. However, in a case such as this, where the minor is charged with a Class I felony and the only evidence against him is the testimony of an accomplice, we cannot overlook inconsistencies that might be less important in a case with stronger evidence.

Additionally, although we do not reach the issue of whether Donald was denied effective assistance of counsel, since we are compelled to reverse Donald's adjudication of delinquency for lack of evidence, it is clear that Donald's defense attorney did not highlight the problems with and inconsistencies in Victor's testimony. The lack of any real attack on Victor's testimony does not allay our mistrust of his testimony. Granted, the State should not be penalized because the defense did not conduct a vigorous cross-examination of the State's main witness, but by the same token the State should not rely upon the defense to make its witness appear more trustworthy by withstanding a vigorous cross-examination. The State should have, if possible, bolstered the believability of Victor's testimony by some corroborating fact or facts, *e.g.*, that Donald and Victor were good friends or were frequently seen in each other's company.

Finally, we considered the factor that the trial court found insufficient evidence on the charge of theft of a firearm, but sufficient evidence on the charge of residential burglary. The elements of the crimes of residential burglary and theft of a firearm are different, but Victor's testimony, if believed, presented sufficient evidence to find Donald delinquent on both charges. The trial judge did not state his reasons for finding sufficient evidence to support a finding of delinquency on one charge but not on the other, even though the only evidence connecting Donald to either offense came from the same source, the accomplice's testimony. The inconsistency in the judgments of the trial court adds to our doubt as to the sufficiency of the evidence against Donald on the residential burglary charge.

For all of the reasons stated, we reverse Donald's adjudication of delinquency.

Reversed.

GOLDENHERSH and RARICK, JJ., concur.