(No. 35304.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN ALDRIDGE, Plaintiff in Error.

*Opinion filed March 31, 1960—Rehearing denied May 16, 1960.*

ROBERT J. BECKER, of Chicago, for plaintiff in error.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and FRANCIS X. RILEY and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

On the afternoon of March 19, 1958, John Aldridge and Manning Coleman met with two other men in a drug store at Grand Avenue and Clark Street in Chicago. The other men were George Payne, a Federal narcotics agent, and Gene Anderson, an informer, also known as "Bozzo." Payne paid $45 in marked money for which he received a small package that contained heroin. Aldridge and Coleman were arrested and searched shortly after Payne received the package, and the marked money was found on Coleman. They were tried together before a judge of the criminal court of Cook County and both were found guilty of the unlawful sale of narcotics. Aldridge was sentenced

to the penitentiary for a term of not less than 10 nor more than 15 years, and, by counsel appointed by this court, he prosecutes this writ of error.

He contends first that the evidence did not establish, beyond a reasonable doubt, that he sold narcotics. Payne and the two defendants testified to what occurred in the drug store on March 19, and each of the defendants testified to earlier events. Aldridge testified that he had known Bozzo for about one year, and Coleman for about two years. On March 12, he had arranged to meet Bozzo at the drug store, and had taken Coleman with him to the meeting. There Bozzo introduced him and Coleman to Payne, who was described as "George, a fellow out of Texas." On March 19 Aldridge again arranged a meeting at the drug store with Bozzo, and again brought Coleman with him. Aldridge and Coleman arrived first, and Bozzo and Payne joined them at the counter.

The witnesses differ as to the details of the events that followed. Payne testified that Aldridge asked him if he was ready to do business, that he answered "Yes" and Aldridge said "O.K." Payne then gave Aldridge the $45 in marked money, which Aldridge handed to Coleman. Coleman then left the drug store. When he returned about 40 minutes later he handed a small metal foil package containing heroin to Aldridge, and Aldridge handed it to Payne.

Aldridge testified that Bozzo asked him if he knew where to get some narcotics and he said he did not; that Bozzo then put the same question to Coleman, who said he might be able to "run out west" and get some; that Payne then handed the money to Bozzo, who handed it to Aldridge, and that he handed it down the counter to Coleman, who left; that on Coleman's return he gave the package to Bozzo who gave it to Payne.

Coleman testified that before they went to the drug store on March 19, Aldridge told him that he had a friend

at Grand and Clark that "he wanted to see about a little business;" that Payne and Bozzo asked Aldridge for some dope, and then "they told me they wanted to get some dope;" that he went to a tavern called the "Set Up" where he met a man whom Aldridge had described to him, who gave him the package of narcotics which he brought back to the drugstore. He testified that Aldridge had "informed" him to go to the "Set Up."

It is true that there is no direct testimony that Aldridge ever owned or had possession of the heroin, or that he acted as principal in the transaction. Also, the record shows that at the time of his arrest Aldridge had not received any of the money which had been paid for the drug. However, the scope of the offense here involved is not restricted by the principles of law that relate to normal sales. Section 2—11 of the Uniform Narcotic Drug Act defines "sale" to include "barter, exchange, or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, broker, agent, servant, or employee." (Ill. Rev. Stat. 1957, chap. 38, par. 192.28—2.11.) Under the broad reach of this definition it is not necessary to trace title to the drug with technical nicety in order to establish an unlawful sale. Nor does one who is proved to have participated in some capacity forbidden by the statute escape guilt because the proof does not fix with certainty the particular capacity in which he acted. Proof that a person participated in a transaction as principal, agent, servant, or employee is sufficient. Cf. *People* v. *Glass*, 16 Ill.2d 595, 597; *People* v. *Shannon*, 15 Ill.2d 494, 496.

Aldridge himself testified that he arranged the meetings. Payne's testimony shows that he dealt with Aldridge, rather than with Coleman. And Coleman testified that Aldridge told him where to go for the heroin, and who to see when he got there. The fact that Coleman still had the marked money when they were arrested does not disassociate Ald-

ridge from the transaction. This evidence was sufficient to show that Aldridge participated in the transaction as either principal, agent or employee and justified the trial court in finding that Aldridge's guilt was established beyond a doubt. This conclusion is not altered by Bozzo's failure to testify. The prosecution was not obligated to call the informer as a witness. *People* v. *Sustak*, 15 Ill.2d 115, 122; *People* v. *Izzo*, 14 Ill.2d 203, 213.

Three exhibits were admitted in evidence. The first was a memorandum upon which the numbers of the marked bills were listed, and the second, a group exhibit, was the marked money. The third exhibit was not formally identified in the record, although it seems clear from the record that it was the package of heroin. As to the first two exhibits, the defendant states in general terms that "no proper foundation in any respect was laid for their reception into evidence." We have examined the record and we fail to find any deficiency in the identification of these exhibits. As to the third exhibit, it was stipulated that the package which was delivered to Payne by the defendants contained 19.0 grams of heroin. If the third exhibit was the heroin, it added nothing to the prosecution's case; and if it was not, it does not appear that the defendant was at all prejudiced by its admission.

The remaining contentions may be disposed of summarily. The defendants were indicted jointly. No showing of anticipated antagonistic defenses was made before the trial, nor were the defenses, as actually presented, basically antagonistic. The trial court did not abuse his discretion by denying the defendant's informal motion for a severance. (*People* v. *Grilec*, 2 Ill.2d 538.) There was testimony by both defendants as to an earlier transaction on March 12. This testimony tended to negative the possibility of innocent or inadvertent conduct on the part of the defendants, and to establish their guilty knowledge, and so would apparently have been admissible even if offered by the

prosecution. (McCormick on Evidence, sec. 157.) It was, however, developed by the attorneys for the defendants, and we fail to see how they may complain of it.

The judgment is affirmed.

*Judgment affirmed.*