The People of the State of Illinois, Plaintiff-Appellee, v. Eloise Johnson, Defendant-Appellant.

Gen. No. 49,723.

First District, First Division.
September 13, 1965.

R. Eugene Pincham and Charles B. Evins, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Paul A. O'Malley, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

The defendant, Eloise Johnson, and the codefendant, Harold Bell, were jointly indicted for knowingly

selling a narcotic drug to a police informer, Ronald Smith, otherwise than as authorized by the Uniform Narcotic Drug Act. The codefendant pleaded guilty to the indictment and was sentenced to the Illinois State Penitentiary for a term of from ten years to ten years and one day.[1] The defendant pleaded not guilty, waived a jury and after a bench trial was found guilty and sentenced to the Illinois State Reformatory for Women at Dwight, Illinois, for a term of from ten to eleven years. From this judgment the defendant appeals.

The defendant contends that the judgment should be reversed for the following reasons: there was no evidence that the defendant sold a narcotic drug to the informer; the trial court erroneously admitted into evidence certain conversations between the codefendant and the state narcotics inspector and other conversations between the informer and the codefendant in all of which conversations the codefendant implicated the defendant; and, finally, because the contents of the packages involved in the separate sales were comingled, there was a failure of proof that the packages involved in the sale for which the defendant and codefendant were jointly indicted contained a narcotic drug.

The record reveals that what was involved here was a "controlled buy" of narcotics. On the evening of January 8, 1963, Mitchell Ware, an inspector for the Illinois Division of Narcotics Control, drove to the vicinity of 35th Street and Michigan Avenue in Chicago with the informer, an admitted narcotics user

---

[1] The codefendant also had been indicted alone under the same statute in another indictment. He pleaded guilty to that indictment and was sentenced to the Illinois State Penitentiary. As will be indicated below, the two indictments were based on two separate sales of narcotics which were made on the same day to the same police informer.

who was paid for each case on which he worked.[2] He had searched the person of the informer and had determined that he was not carrying any money or narcotics. He gave the informer twenty-one dollars consisting of one $10 bill, one $5 bill and six $1 bills. The bills had been dusted with a powder which illuminates when placed under a fluorescent light and their serial numbers had been recorded.

On two occasions that evening, the informer entered the DeCortez Tavern alone. Each time he purchased narcotics with the dusted and recorded money. The indictment of the codefendant alone was based on the informer's first visit to the tavern. The informer testified that on that first visit, he met the codefendant, had conversation with him about obtaining narcotics, gave him the $5 bill and five of the $1 bills in exchange for which the codefendant gave him two white paper packages containing a white powder. He testified further that after he left the tavern, he returned to the official car and gave the inspector the two packages. The inspector testified that he kept a surveillance on the informer from the official car which was parked in an alley across from the tavern entrance; that the informer, on this first visit, spent about five minutes in the tavern; and that he then returned to the car and gave the inspector the two paper packages.

The informer made a second visit to the tavern and it was on the basis of that visit that the defendant and

---

[2] The informer testified that though he was not a daily user of narcotics, he used small amounts of narcotics ("about a half of a five dollar bag") at different times and that he last used narcotics a week before he testified at the trial. Smith also admitted that he was paid for each case he worked on; that the amount he was paid depended on "how large a case it was" and on "the outcome of the case." He further stated that it was correct to say that "if there is a conviction you get a certain amount and if it's a not guilty you get a certain amount."

codefendant were jointly indicted. During this second visit, the inspector again undertook surveillance of the informer from his parking place in the alley across from the tavern. The informer testified that he walked into the tavern and asked the codefendant for two more packages of narcotics. The informer said that he saw the defendant sitting behind the codefendant in a booth; that he gave the codefendant the dusted and recorded $10 bill; that the codefendant in turn gave the bill to the defendant who then got up and went to the washroom; that the defendant returned and gave the codefendant two folded pieces of paper containing a white powder which the codefendant in turn handed to the informer. The informer then left the tavern, returned again to the official car and gave the two packages to the inspector.

The inspector testified that he opened all the packages involved in both sales; that he field tested their contents; that the test was positive; and that he weighed the powder, and poured all of it into a single manilla envelope which he sealed and gave to another inspector. The other inspector testified that he delivered the envelope to the chemist employed by the United States Government, who, it was stipulated, would testify that the white powder in the envelope was heroin.

The inspector testified that, using the informer's description of the defendant and codefendant, other police officers made the arrests in the tavern on the evening in question. The defendant's purse was found to contain five of the dusted and recorded bills, including the $5 bill and four of the $1 bills. In addition, traces of the luminous powder were found on the defendant's purse and hands. The dusted and recorded $10 bill was found in the codefendant's possession.

The codefendant and the defendant herself were the only witnesses for the defendant. The codefendant testified that the second time the informer was in the tavern, he took the informer's money and then he and the informer went to the washroom where he gave the informer two packages. The codefendant stated that he subsequently gave the money to a man named Bowman. He denied that he received anything from the defendant or that he had given the defendant any of the money he had received from the informer. The defendant testified that she had not received any money from the codefendant and that she had not given him the packages. She said that shortly before the police arrived the man named Bowman had given her the money, which was found in her purse, to hold for him.

At several points in the record, it appears that testimony concerning certain conversations which implicated the defendant were admitted over the defendant's objection that they were hearsay. On direct examination, the informer testified that the codefendant told him that he (the codefendant) had to get one package of narcotics from the defendant. When the inspector was called by the State in rebuttal, he testified that the codefendant told him, outside the presence of the defendant, that he (the codefendant) had gotten the narcotics from the defendant and that he was dealing for her.

From a careful review of the entire record, it is our opinion that the evidence did not prove, beyond a reasonable doubt, that there was a sale of narcotics by the defendant to the informer within the meaning of the Uniform Narcotic Drug Act under which the defendant was indicted and convicted. That statute provides in relevant part that:

> It is unlawful for any person to . . . sell . . . any narcotic drug, except as authorized in this Act. (Ill Rev Stats 1963, c 38, § 22–3.)

The statute defines "sale" as

> . . . traffic in, barter, exchange, or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, broker, agent, servant or employee. (Ill Rev Stats 1963, c 38, § 22–2(1).)

The State argues that the evidence in the case at bar supports a finding that there was a sale by the defendant to the informer. The State contends that the record shows that the defendant had participated in the sale to the informer, but that it is unnecessary to show the particular capacity in which she acted. It also contends that the record shows that the defendant was an important actor in a common design between the defendant and the codefendant to sell narcotics to the informer. We do not agree. We do not believe that the evidence proved a "sale" as that term has been defined by the statute and applied in the cases cited by the State.

Here it is undisputed that the informer did not negotiate with the defendant for the purchase of narcotics. There is no evidence that the defendant overheard any conversation between the codefendant and the informer concerning narcotics. There is no evidence that the defendant had a conversation with the informer. It is clear that the defendant did not give the narcotics to the informer and did not take any money from the informer. There is no evidence about the defendant's knowledge concerning the transaction between the codefendant and the informer. The only evidence implicating the defendant in the transaction was given by the informer, who was an admitted

narcotics user and who was paid according to the results of each case. The informer stated that he gave the codefendant the dusted and recorded $10 bill; that the codefendant gave that bill to the defendant; that after a trip to the washroom, the defendant gave the codefendant two packages which the codefendant in turn gave to the informer. However, it appears that the $10 bill which was the only money involved in this transaction was not found in the defendant's possession although she was arrested only several minutes after the sale. Rather the $10 bill was found in the codefendant's possession.

The State relies on several cases in which the courts have found that the evidence proved a sale of narcotics by the defendant. However, those cases contain significant facts which are not present here and which, therefore, distinguish those cases from the instant case. In People v. Aldridge, 19 Ill2d 176, 166 NE2d 563, the finding that the defendant participated in the sale either as principal, agent or employee was based on facts which are absent in the present case. There the defendant admitted arranging a meeting between the informer and the codefendant; the narcotics agent, to whom the sale was made, dealt only with the defendant; he gave the money to the defendant and he received the narcotics from the defendant; finally, the codefendant testified that the defendant told him where and from whom to obtain the narcotics.

In People v. Alexander, 21 Ill2d 347, 172 NE2d 785, there was evidence that the codefendant told the defendant that he wanted the narcotics for another person, the informer. From this fact, the court concluded that there was sufficient evidence to show a sale of narcotics by the defendant even though the sale was made through the codefendant. There is no evidence in the present case concerning the defendant's knowl-

edge about any of the aspects of the transaction in question. In People v. Smith, 53 Ill App2d 282, 202 NE2d 882, the transaction took place in the defendant's own apartment and in his presence; the defendant was present during a conversation concerning narcotics between the codefendant and the police officer to whom the sale was made; moreover, after the codefendant left the apartment to get narcotics the defendant told the police officer when and where the codefendant would get the narcotics and what its quality would be; finally, when the officer said that he would like to try some of the narcotics which the codefendant gave him, the defendant supplied the officer with two hypodermic needles and syringes. It was under these facts, none of which are to be found in the instant case, that the court in Smith concluded that the defendant assented to the sale, lent to it his countenance and approval, and was thereby aiding and abetting the crime.

Finally in People v. Hampton, 23 Ill2d 310, 178 NE2d 371, though the codefendant and not the defendant took the informer's money and gave him the narcotics, it appears that at the informer's request for narcotics the defendant had instructed him to walk up the street where the transaction subsequently took place. In addition, the marked money was found in the possession of the defendant, not the codefendant, after the transaction. It was under these circumstances that the court found that a common design to sell narcotics was proved and that whatever one does in furtherance of the design is the act of the other.

Since we conclude that the State failed to prove, beyond a reasonable doubt, a sale to the informer by the defendant, it is unnecessary to consider the defendant's other claims of error. The conviction cannot

stand and the judgment of the Criminal Division of the Circuit Court must be reversed.

Judgment reversed.

MURPHY and KLUCZYNSKI, JJ., concur.