THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES CANSLER, Defendant-Appellant.

(No. 70-62; )

Second District—February 17, 1971.

Morton Zwick, of Defender Project, and Norman Fishman, both of Chicago, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan, (Norman G. Reese, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant James Cansler, on January 23, 1968, was found guilty by a jury of the unlawful possession and sale of narcotic drugs. He was sentenced to the penitentiary for a term of not less than 10 years and not more than 11 years.

The question presented to this Court is as to whether the prosecution is under a duty to furnish the present address of the informer, the contention being that the failure to do so is a denial of his right to a fair trial under the Due Process Clause of the 14th Amendment to the United States Constitution.

A brief resume of the facts is in order.

Paul Hemphill, an Illinois narcotics inspector testified that he went to the Cat and Fiddle tavern in Waukegan on the afternoon of December 5th, 1966. As the defendant and two women walked out of the tavern they were met by Hemphill who said "Hi Jim." Hemphill then told the defendant that he wanted to buy a $10.00 bag of Marijuana and all four got into Hemphill's car and drove to the 1400 block of Hervey Street in North Chicago. Cansler got out of the car, went into a building and returned with three tin foil packages which he gave to the narcotics agent, saying, "You will like this, it came from Mohammed." Hemphill gave him $30.00. They drove back to the Cat and Fiddle tavern and separated.

The defendant Cansler took the stand and testified in his own behalf. He confirmed the testimony of the narcotics inspector but stated that the four people went to North Chicago at the request of "Jessie Demus" one of the two girls. When they got to the 1400 block in question, at the request of Jessie Demus he went to a red garbage can and found a brown paper bag; that he returned to the car and gave it to Jessie Demus who in turn gave it to the narcotics inspector who gave her the money for it; and the packages were in shiny foil as described by the witness for the State. These were the only two witnesses who testified.

The name "Jessie Demus" does not appear on the back of the indictment, nor was the name furnished to the defendant upon his request for a list of the witnesses. The States' Attorney in argument stated that he did not know the name until it was brought out at the trial. No one appears to know the name of the other woman present, except that it might be "Mary."

Interestingly enough, the Defendant testified that he had known Jessie Demus "practically all my life." He further testified that he knew where she was—"In the State Penitentiary for women in West Virginia."

● 1 The State is not required to call all material witnesses to a crime. (*People v. Aldridge* (1960), 19 Ill.2d 176, 166 N.E.2d 563; *People v. Izzo* (1958), 14 Ill.2d 203, 151 N.E.2d 329.) However, here the State contends that they did not know the name of the witness, Jessie Demus, also known as Jessie Davis. Defendant not only knew of her, he knew where she was at the time of trial.

Several Illinois cases deal with the concealment of a witness. In *People v. Wilson* (1962), 24 Ill.2d 425, 182 N.E.2d 203, the Supreme Court reversed the trial Court, where the material witness was put on a train and sent out of the State by Federal Narcotics agents. In really a companion case, *People v. Williams* (1968), 40 Ill.2d 367, 240 N.E.2d 580, defendant and a different offense, but involving the same purported informer who had been sent out of the State. However, in both of those cases, the informer, a Ruth Killingsworth, had set up the transaction in her apartment.

In *People v. Bliss* (1970), 44 Ill.2d 363, 255 N.E.2d 405, the Defendant was found guilty of unlawfully selling a narcotic drug. In this case the informer named was listed as James Wilson. At the trial he revealed that his real name was Patrick Judge. The Defendant there contended that his constitutional rights of due process were denied him by the State in concealing the true identity of the informer. However, the Defendant admitted that he had known the informer since childhood. The facts of the sale are most similar to the instant case, and the Court said:

"Defendant then detailed the movements of himself and Wilson in such a way that there was practically no difference in their testimony, the only difference being that defendant denied the delivery and sale of the drug to the informer. Defendant clearly recalled their trip together in defendant's automobile as described by Wilson, including the direction taken, distance traveled, area visited and their ultimate return to the neighborhood where the officers were waiting for Wilson. It appears, therefore, that there was no element of surprise on defendant's part in his confrontation with the informer at the trial. He distinctly remembered his contact with him at the time and place in question and

was able to give an explanation of their movements consistent with his innocence."

In *Bliss* the Court further stated that *Roviaro v. U.S.*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 and *People v. Williams*, 40 Ill.2d 367, 240 N.E.2d 580 did not apply because the defendant was afforded trial confrontation and the opportunity for cross examination, and

"that defendant was aware of the identity of his accuser and had a clear recollection of the transaction in which he was charged with having committed the offense."

In the instant case Jessie Demus was not the accuser but may or may not have been the informer. In *People v. Jarrett*, (1965), 57 Ill.App.2d 169, 206 N.E.2d 835, the defendant was charged for soliciting for prostitution. Phillips, a Chicago police officer testified and during cross examination Counsel for defendants attempted to obtain the name of the man who was with him on his first visit to Jarrett's apartment. The Court sustained the objection to this on the ground of informer privilege. Defendant contended that this was reversible error, that is, the restriction of the cross examination of the police officer to discover the identity of the man who accompanied him. She relied on *Roviaro v. U.S.*, *supra*.

The Court went on to state that:

"Defendant had a personal acquaintanceship with the informer prior to the offenses charged herein, * * * no effort was made by her to discover any further information regarding 'Red' or his whereabouts nor did she attempt to subpoena him. There is no indication of prejudice of disadvantage suffered by the defendant but the general charge that 'Red' could have possibly refuted the testimony of Phelps concerning the conversation first had with her."

Likewise, in *People v. Adorno* (1970), 126 Ill.App.2d 98, 261 N.E.2d 443, the police officer arrested the defendant when two men, Aroyo and Lee were passing money to the defendant and receiving a silver package from him. At the trial the defendant testified he did not know Aroyo or Lee. Aroyo or Lee were not called to testify. Upon appeal defendant contended that since Aroyo did not appear, was not a witness, he was denied that right to confront him. The Court said:

"Defendant had seen the list of the prosecution's witnesses before trial and he knew that Aroyo was not going to be called as a witness by the State. If defendant felt that the testimony of Aroyo was essential he could have required his appearance by means of the subpoena power. This he did not do."

See also *People v. Richards* (1970), 120 Ill.App.2d 313, 256 N.E.2d 455.

■■ Counsel for the defendant has cited *Roviaro v. U.S.*, *supra*, as

authority for his contention that it was the duty of the prosecution to produce the address of the alleged informer. The main holding in *Roviaro* was that where the disclosure of an informer's identity or his whereabouts is relevant and helpful to the defense of the accused the informer privilege must give way. In *Roviaro* the informer met with the defendant and purchased the narcotics from him while being observed by various policemen. *Roviaro* does not fit the facts in the instant case. Firstly, the sale of the narcotics was consummated by the informer while in the instant case Jessie Demus was merely present. Secondly, in *Roviaro* the government refused to disclose the identity and whereabouts of the informer upon request. In the instant case the State apparently did not know the name of Jessie Demus until the actual trial and further did not know her address, but the defendant not only knew Jessie Demus, he knew she was present at the time of the sale and he knew where she was at the time of trial. It can hardly be said that he was taken by surprise at the trial in view of these circumstances. His contention that she:

"would be essential to a fair determination of the cause"

was without merit. As the Court said in *Roviaro*:

"The desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide."

He knew her, he knew where she was and could have well interviewed her prior to trial and had her present at the trial if he thought she were a necessary witness.

*Gilmore v. U.S.* (1958), 256 F.2d 565 is in substantial agreement with *Roviaro* and fails in its applicability for the same reason as indicated above.

In *U.S. v. Oropeza* (1960), 275 F.2d 558, the government did not know the names and the addresses of the informers. The defendant contended that the government was concealing their names and whereabouts. The Court rejected this contention and said in interpreting *Roviaro*:

"Roviaro holds that the Government has no absolute privilege to withhold information *that it possesses* concerning the identity of persons who furnish information to law enforcement officers where the person had actively participated in the transaction for which the defendant stands accused."

The last contention of the defendant is that the prosecution did not prove the defendant guilty beyond a reasonable doubt. The only testimony adduced by the State was that of the narcotics investigator.

■■ The Court, in *People v. Adorno, supra,* stated:

"It has been consistently held that the testimony of one witness, if it is

positive and the witness credible, is sufficient to support a conviction even though the testimony is contradicted by the accused. *People v. Johnson*, 24 Ill.2d 195, 181 N.E.2d 164; *People v. Cox*, 22 Ill.2d 534, 177 N.E.2d 211; and *People v. Smith*, 121 Ill.App.2d 105, 257, N.E.2d 261.

See also *People v. Slifer* (1969), 108 Ill.App.2d 275, 247 N.E.2d 174; *People v. Woods* (1963), 26 Ill.2d 582, 187 N.E.2d 692; and *People v. Williams*, 75 Ill.App.2d 50, 221 N.E.2d 48.

The reviewing Courts of this State have repeatedly stated that it is for the Court or the Jury to weigh the testimony and to determine the credibility of the witnesses. The determination of truth in any debatable situation is a matter peculiarly for the Judge or the jury. It is not the duty of the reviewing Court to substitute its opinion therefore.

Judgment affirmed.

SEIDENFELD and T. MORAN, JJ., concur.