PEOPLE *v.* BOONE

CRIMINAL LAW—NARCOTICS—SALE OF MARIJUANA—AGENT.
> A person "sells" marijuana within the meaning of the narcotics
> act whether he acts as a principal, proprietor, agent, servant,
> or employee in the transaction (MCLA § 335.51).

Appeal from Kent, John T. Letts, J. Submitted Division 3 January 26, 1971, at Lansing. (Docket No. 9651.) Decided February 25, 1971.

Robert Lord Boone was convicted of the unlicensed sale of marijuana. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *Donald A. Johnston, III,* Chief Appellate Attorney, for the people.

*Theodore Earl Dunn,* for defendant on appeal.

Before: QUINN, P. J., and McGREGOR and BRONSON, JJ.

PER CURIAM. Defendant was convicted by a jury of sale of narcotics, MCLA § 335.152 (Stat Ann 1957

REFERENCE FOR POINTS IN HEADNOTE
25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 35–39.

Rev § 18.1122). He appeals and the people move to affirm.

The critical facts surrounding the offense are that one James Johnson entered into a discussion with one William Gaunt of the Muskegon Police Department whereby Johnson offered to attempt to make a buy of marijuana in Grand Rapids. An agreement was reached that Johnson would make the buy with furnished funds and be reimbursed for out-of-pocket expenses.

Johnson and one Lewis Thomas proceeded to Grand Rapids where they planned to make a buy from a man named Saunders. Unable to locate Saunders, they met a man in a bar who offered to get some marijuana. At trial that man was identified as the defendant.

Johnson, Thomas, and the defendant left the bar and proceeded to a house where defendant, after going inside, informed Johnson that he could get a "bag" but would need $15 to pay for it. Johnson gave defendant the money and he went back into the house returning shortly. After they left the area, the defendant gave Johnson a tinfoil envelope which tests later revealed contained marijuana. Johnson testified that he then gave defendant $3 for his troubles.

Of the issues raised by defendant on appeal, only one merits attention. The defendant argues that the trial judge erred in refusing to give the following requested instruction:

"Before you can find the defendant guilty of sale of narcotics, you must find beyond a reasonable doubt that he sold narcotics to someone. If you find that he was merely a conduit, or agent, or errand boy of James Johnson, the police informant, then you must find him not guilty. The term agency in its broadest sense, includes every relation in which

one person acts for or represents another by the latter's authority."

Defendant's contention is not persuasive. The definitions section of the Michigan narcotics act, MCLA § 335.51 (Stat Ann 1957 Rev § 18.1071), defines a "sale" as follows:

" 'Sale' includes barter, exchange, or gift, or offer therefor, and each such transaction made by any person, whether as principal, proprietor, *agent,* servant, or employee." (Emphasis supplied.)

It is evident that in the transaction set out in the above facts whether or not defendant was an "agent" is not a defense under the definition of "sale" as supplied by the Michigan legislature.

While this point has not been heretofore raised in Michigan, we note that in Illinois, where the statutory definition of a "sale" is similar, a defendant acting as an "agent" is held to fall under the sales statute. The Illinois Supreme Court has commented:

"It is true that there is no direct testimony that Aldridge ever owned or had possession of the heroin, or that he acted as principal in the transaction. Also, the record shows that at the time of his arrest Aldridge had not received any of the money which had been paid for the drug. However, the scope of the offense here involved is not restricted by the principles of law that relate to normal sales. Section 2-11 of the Uniform Narcotic Drug Act defines 'sale' to include 'barter, exchange, or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, broker, agent, servant or employee.' (Ill Rev Stat 1957, Chap 38, par 192.28-2.11.) Under the broad reach of this definition it is not necessary to trace title to the drug with technical nicety in order to establish an unlawful sale. Nor does one who is proved

to have participated in some capacity forbidden by the statute escape guilt because the proof does not fix with certainty the particular capacity in which he acted. Proof that a person participated in a transaction as principal, agent, servant, or employee is sufficient." *People* v. *Aldridge* (1960), 19 Ill 2d 176, 179 (166 NE2d 563, 565).

"We interpret the meaning of the word 'sale', as defined by the act, to be much broader in scope than that usually given to it in other branches of the law. Admittedly, the defendant took the role of at least an agent, and the act specifically declares an agent in a narcotics transaction to be a seller. We are of the opinion that the definition shows a legislative intent that the act of a person whether as agent, either for the seller or the purchaser, or as a go-between, in such a transaction constitutes a sale. Since the agency was admitted and proved, the conviction under counts for dispensing and selling was established beyond a reasonable doubt." *People* v. *Shannon* (1959), 15 Ill 2d 494, 496, 497 (155 NE 2d 578, 580.)

While noting that decisions in other jurisdictions may be interpreted to hold otherwise (*Commonwealth* v. *Harvard* [1969], 356 Mass 452 [253 NE 2d 346]; *People* v. *Branch* [1961], 13 App Div 2d 714 [213 NYS2d 535]; *United States* v. *Sawyer* [CA3, 1954], 210 F2d 169), we feel that the Illinois decisions are more in line with what we think is a clear legislative intent in including the term "agent" within the definition of a "sale". The trial judge did not err in refusing the requested instruction.

Motion to affirm is granted.