(No. 59837.— ▮▮▮▮▮▮▮▮

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RICHARD J. NEWELL, Appellee.

*Opinion filed October 3, 1984.*

Neil F. Hartigan, Attorney General, of Springfield, and Samuel Naylor VI, State's Attorney, of Carthage (Mark L. Rotert and Jack Donatelli, Assistant Attorneys General, of Chicago, and John X. Breslin and Vicki R. Wright, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

Following a jury trial in the circuit court of Hancock County, defendant, Richard Joseph Newell, was convicted of burglary and sentenced to four years' imprisonment. A divided appellate court reversed that conviction (121 Ill. App. 3d 552), and we allowed the State's petition for leave to appeal (87 Ill. 2d R. 315(a)). We need consider only whether the evidence was sufficient to prove defendant's guilt beyond a reasonable doubt.

Defendant, Ricky Barnes, David Bence and David Snyder were jointly indicted on charges of burglarizing a vacant farmhouse in Hancock County and taking several pieces of antique furniture. The charges against defendant were based on an accountability theory. (Ill. Rev. Stat. 1981, ch. 38, par. 5—2.) Barnes gave to the police a statement implicating all of the defendants, and Bence and Snyder thereafter pleaded guilty and were each sentenced to two years' imprisonment. Barnes was granted immunity from prosecution, apparently in exchange for his agreement to testify against the others. The only evidence connecting defendant with the crime was the testimony of Ricky Barnes which, insofar as it related to defendant's involvement in the offense, was flatly contradicted by Bence and Snyder.

Barnes testified that on the day of the offense he met

with Bence, Snyder, defendant and Lawrence Courtorius at the latter's residence in Quincy. There, according to Barnes' testimony, defendant suggested that the others burglarize the Hancock County farmhouse which defendant had previously pointed out to Bence. Defendant, said Barnes, offered the use of his pickup truck to transport the stolen property in exchange for a percentage of the proceeds that might be realized. Defendant also agreed, according to Barnes, to sell the property for the others and for that purpose suggested that they meet him at the Sandbar tavern in Quincy upon completion of the offense. Barnes stated that he, Bence and Snyder agreed to defendant's plan and drove to Hancock County that day in defendant's truck. Courtorius was apparently against the proposal and did not participate.

Barnes testified that they arrived at the farmhouse, drove around awaiting nightfall, and that he then entered the house through a partially open window and let Bence and Snyder in through the back door. They then selected several pieces of furniture, loaded them onto the pickup truck which was parked next to the house and drove back to Bence's home in Quincy. Barnes stated that someone contacted defendant who appeared at Bence's residence a short time later to observe the stolen property. When defendant stated that he would not take the property until the next day, Barnes, Bence and Snyder proceeded to a nearby tavern and persuaded some friends to purchase the property for $250. Barnes further testified that he saw defendant the next day and paid him $30 for the use of the truck.

Barnes admitted on cross-examination that he used defendant's truck every day and that it was not unusual that he had it on the day of the burglary. Also on cross-examination, Barnes gave the following answer, resulting, perhaps, from the leading nature of the question:

"[DEFENSE COUNSEL]: Okay. Other than having [defendant's] truck, which you had it anyway all of the time, [defendant] had nothing to do with it, did he?

[BARNES]: No."

On re-direct examination, however, Barnes reaffirmed his earlier testimony that defendant planned the burglary and directed the others to bring the stolen property to him in Quincy.

It was established that Barnes had three prior convictions for theft and was serving a sentence in the Adams County jail at the time of his testimony, and the jury was informed that Barnes had received immunity in exchange for his testimony. The defendant did not testify.

Testifying for the defense, Bence and Snyder denied any involvement by defendant, although both witnesses corroborated Barnes' testimony respecting the actual commission of the burglary. Bence testified that he had known of the vacant farmhouse from previously driving past it and looking inside and had not been told about it by defendant. Bence and Snyder each stated that no meeting occurred with defendant on the day of the burglary, that defendant was not contacted upon their return to Quincy, and that defendant did not appear at Bence's residence that evening. Both testified that they believed the pickup truck was owned by Barnes since he drove it every day. It was also established that Snyder had two burglary convictions, and Bence one.

As noted, the jury returned a guilty verdict based on the foregoing evidence and the appellate court reversed, believing the testimony of Bence and Snyder created a reasonable doubt of defendant's guilt. The dissenting justice considered it improper for the court to substitute its judgment for that of the jury on the question of the witness' credibility.

This court has frequently acknowledged that the uncorroborated testimony of an accomplice is sufficient to

sustain a conviction if such testimony convinces the jury of defendant's guilt beyond a reasonable doubt. (*People v. Ash* (1984), 102 Ill. 2d 485, 493; *People v. Wilson* (1977), 66 Ill. 2d 346, 349; *People v. Pittman* (1973), 55 Ill. 2d 39, 57; *People v. Wollenberg* (1967), 37 Ill. 2d 480, 484-85.) We have emphasized, however, that accomplice testimony "is fraught with serious weaknesses such as the promise of leniency or immunity and malice toward the accused" (*People v. Wilson* (1977), 66 Ill. 2d 346, 349), and should therefore be accepted only with utmost caution and suspicion and have the absolute conviction of its truth. (*People v. Ash* (1984), 102 Ill. 2d 485, 493; *People v. Baynes* (1981), 88 Ill. 2d 225, 232; *People v. Lindgren* (1980), 79 Ill. 2d 139, 142; *People v. Wilson* (1977), 66 Ill. 2d 346, 349; *People v. Clements* (1963), 28 Ill. 2d 534, 538.) While we will not lightly regard the jury's judgment on credibility question, "it is our duty, where a verdict of guilty is returned by a jury *** not only to carefully consider the evidence but to reverse the judgment if the evidence is not sufficient to remove all reasonable doubt of defendant's guilt and is not sufficient to create an abiding conviction that he is guilty of the crime charged." *People v. Bartall* (1983), 98 Ill. 2d 294, 305-06.

In the circumstances here we simply cannot say that the testimony of Barnes removed all reasonable doubt of defendant's guilt. The case is strikingly similar to *People v. Hermens* (1955), 5 Ill. 2d 277, where the uncorroborated testimony of an accomplice implicating the defendant was directly contradicted by both a second accomplice and the defendant. The court held there that the testimony of the defense witnesses was entitled to as much weight as the testimony of the accusing accomplice "and where other accomplices support defendant's denial the defendant's guilt [is] not established beyond a reasonable doubt." (5 Ill. 2d 277, 286.) The same rule must

apply here. In addition to receiving immunity Barnes' testimony regarding defendant's participation was wholly uncorroborated and directly contradicted by both Bence and Snyder in their material respect. There is nothing, other than the somewhat equivocal answer of Barnes earlier quoted, to indicate where the truth lies, for the use of defendant's truck is not incriminating here where it is undisputed that Barnes had it every day. We realize that the grant of immunity to Barnes which may have been influential in securing his testimony, loses much of its significance when it is considered that he had given a substantially similar statement to the police before immunity had been granted by the State's Attorney. We also appreciate the possibility that it is the fact that Barnes implicated them which may have prompted Bence and Snyder to contradict his testimony. But where the *only* evidence is the testimony of three accomplices, all convicted felons, one of whom says defendant is guilty and two of whom say he is not, with no corroboration of either view, we simply cannot say there has been proof of guilt beyond a reasonable doubt. *Hermens; People v. Mentola* (1971), 47 Ill. 2d 579, 583.

The cases urged by the State and those cited in the appellate court dissent are inapposite. In *People v. Palmer* (1962), 26 Ill. 2d 464, the accomplice's testimony implicating the defendant was not only corroborated by the fact that an adding machine the defendant was accused of stealing was recovered in the defendant's apartment, but the accomplice had already pleaded guilty and been sentenced at the time of his testimony. Thus, *Palmer* is not a case involving uncorroborated accomplice testimony given in exchange for immunity and contradicted by two apparently equally credible accomplices. Similarly, corroborating evidence was found to exist in *People v. Pittman* (1982), 93 Ill. 2d 169; *People v Brown* (1972), 51 Ill. 2d 271; *People v. Wollenberg* (1967), 37 Ill.

2d 480; *People v. Nastasio* (1963), 30 Ill. 2d 51; *People v. Hansen* (1963), 28 Ill. 2d 322; and *People v. Flaherty* (1947), 396 Ill. 304. Finally, while *People v. Harvey* (1926), 321 Ill. 361, is relied on for the proposition that the jury's determination on witness credibility should not be disturbed, this court stated in *Harvey* that the accomplice's testimony was "so unreasonable that it [was] not convincing" and reversed the defendant's conviction.

For the foregoing reasons the judgment of the appellate court is affirmed.

*Judgment affirmed.*