THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL GNAT, Defendant-Appellant.

Second District   No. 2—86—0999

Opinion filed February 9, 1988.

LINDBERG, P.J., dissenting.

Mary Robinson, of Robinson & Skelnik, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and James E. Sternik, of Chicago (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Paul Gnat, was convicted of unlawful delivery of between 10 and 30 grams of a substance containing cocaine. (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(b)(2).) Defendant was sentenced to a 48-month term of probation conditioned upon service of periodic imprisonment for six months and was fined $1,000. Defendant appeals contending that his conviction must be reversed because it was based upon the inherently suspicious and uncorroborated testimony of an accomplice. We reverse.

The accomplice, Allan Loder, testified on behalf of the State. Loder testified that he arranged to sell 14 grams of cocaine for $1,000 to William Plahm, who turned out to be an agent for the Northeastern Metropolitan Enforcement Group (MEG). Loder stated that on December 7, 1984, he telephoned defendant, whom he had known for approximately 15 years, and told him that he had a buyer who wished to purchase 14 grams of cocaine. According to Loder's testimony, defendant told Loder to meet him at the Suburbanite Bowling Alley in Westmont between 3:30 and 4 o'clock that afternoon.

Loder met Plahm at a record store in Westmont that afternoon. They drove to the bowling alley in Loder's car and parked near the east entrance. Plahm and Loder sat in the lounge for approximately 20 minutes. Loder then got up and walked to the back of the bowling alley, where he saw defendant playing pool. Loder testified that defendant told him that the cocaine was wrapped in a handkerchief in the glove compartment of an unlocked car near the west entrance of the bowling alley.

Loder testified that he then went out the west entrance of the bowling alley and found the cocaine wrapped in a handkerchief where defendant told him it would be. Loder returned to the bowling alley, found Plahm, and suggested that they leave. They left through the east entrance and returned to Loder's car. Loder showed Plahm the cocaine, and Plahm told him that the money was in his car. Loder then drove Plahm back to the record store. Shortly after Plahm ex-

ited Loder's car, it was surrounded by agents who placed him under arrest.

Loder further testified that the State made no promises to him in exchange for his testimony against defendant. He later stated that he was told that if he testified truthfully against defendant, the State would recommend probation or minimal punishment. Loder also testified that he was told that the State's Attorney's office would probably recommend probation, but had not promised to do so. Loder admitted that he was a periodic cocaine and marijuana user at the time of the transaction with Plahm.

Plahm also testified for the State. Plahm testified that he met Loder at a record store at approximately 3:30 in the afternoon on December 7, 1984. Loder told Plahm that they would conduct the deal at a nearby bowling alley where "his guy, Paul" would be. They drove from the record store to the bowling alley in Loder's car. After they were in the bowling alley for approximately 10 minutes, Loder told Plahm that he saw defendant and walked off in a westerly direction. Plahm did not see where Loder went. Loder returned several minutes later and told Plahm to follow him. They returned to Loder's car, where Loder handed Plahm a blue and white handkerchief wrapped around a baggy containing cocaine. The parties stipulated that the baggy contained 10.1 grams of cocaine. Plahm further testified that he was to pay $1,000 for the cocaine. He told Loder that the money was in his car, and Loder drove him back to the record store. Plahm then gave a prearranged signal, and Loder was taken into custody.

A second MEG agent, William Golden, also testified on behalf of the State. Golden testified that he followed Loder's car from the record store to the bowling alley. He saw Loder and Plahm enter the bowling alley and followed them in on foot. Golden saw them sit in the lounge for a "minute or two" and then saw Loder get up and walk over to the poolroom at the other end of the building. Golden saw Loder speak to another individual in the poolroom whom he identified as defendant. Golden then saw Loder leave the bowling alley through a door located near the poolroom. Golden did not see where Loder went after Loder left the bowling alley. He did not follow Loder out of the bowling alley. He saw Loder reenter the building through the door near the poolroom and return to the lounge area. He then observed Loder and Plahm leave the building and go to Loder's car. Golden further testified that following Loder's arrest he returned to the bowling alley where defendant was arrested. Plahm testified that after his arrest, defendant stated that he was at the bowling alley to buy drugs from Loder.

At the conclusion of the bench trial, the court acknowledged the dubious nature of Loder's testimony identifying defendant as the supplier of the cocaine and noted that corroboration was therefore required. The court found corroboration in Plahm's testimony that Loder wanted to complete the transaction at the bowling alley where "his guy, Paul" would be. Defendant brought this appeal following his conviction.

Defendant contends that his conviction must be reversed because it is based on the inherently suspicious and uncorroborated testimony of an accomplice who was an acknowledged drug user at the time of the offense and for whose testimony the State offered leniency. We agree.

■■ ■ It is well settled in Illinois that the uncorroborated testimony of an accomplice is sufficient to sustain a conviction. (*People v. Newell* (1984), 103 Ill. 2d 465, 469-70.) However, because accomplice testimony carries with it such inherent weaknesses as promises of leniency or malice toward the accused, it must be cautiously scrutinized on appeal and should not be accepted unless it carries with it an absolute conviction of truth. (103 Ill. 2d at 470; *People v. Ash* (1984), 102 Ill. 2d 485, 493; *People v. White* (1985), 134 Ill. App. 3d 262, 273-74.) Whether accomplice testimony, corroborated or uncorroborated, is a satisfactory basis for a conviction goes to the weight of the evidence. (*White*, 134 Ill. App. 3d at 274.) A reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses, but will reverse only if the evidence is so improbable, impossible, or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. (134 Ill. App. 3d at 274.) Where it is plainly apparent that the defendant was not proved guilty beyond a reasonable doubt, the conviction must be set aside. *People v. Wilson* (1977), 66 Ill. 2d 346, 349.

Our conclusion after reviewing the record is that there was not an absolute conviction of truth in Loder's testimony. First, we note that Loder pleaded guilty to the charges against him and acknowledged that the State would recommend a lenient sentence if he testified truthfully at defendant's trial. The fact that an accomplice witness has received or expects to receive a reward or some measure of consideration in exchange for his testimony against a defendant does not render his testimony insufficient to prove the defendant's guilt. (*White*, 134 Ill. App. 3d at 274.) However, it is significant to note that Loder initially denied that the State's Attorney would recommend leniency in sentencing for his testimony. Loder later recanted and stated that although no promises were made, "there was the motion

put forth that were [he] to testify truthfully, according to what evidence was already in hand, that the State would ask for probation or a minimal punishment." Furthermore, Loder's identification of defendant as his supplier was inherently suspicious. Loder did not tell Plahm at the time of the transaction that the drugs were being supplied by defendant. Moreover, Loder was merely observed talking to defendant when they were seen together at the bowling alley. Golden did not hear the conversation between Loder and defendant and did not see anything change hands. Golden further did not see Loder actually obtain the drugs. With the exception of Loder's testimony, no evidence whatsoever was introduced tying defendant to the drugs.

In addition, testimony which the trial court found corroborated Loder's testimony identifying defendant as the supplier of the drugs was in fact not corroboration on that point. At the conclusion of the bench trial, the court stated:

"It is clear that the Court should and it does view the testimony of Mr. Loder with a great deal of suspicion, and it is necessary to look for corroboration.

The corroboration in this particular case takes the form of—and I think it is probably the key of the disclosure by Mr. Loder to Plahm in advance of the transaction of the Defendant's name, names him by name, and then all the rest of the transaction appears to be consistent with and supportive of the testimony of Mr. Loder."

Thus, the trial court, as did this court, viewed Loder's testimony with suspicion and required corroboration. The court found sufficient corroboration in Plahm's testimony where Plahm stated that *Loder told him* that they would complete the transaction at the bowling alley where "his guy, Paul, would be." Apparently, the trial court also found corroboration in Golden's testimony establishing that he saw Loder talking to defendant prior to the transaction. We find these elements of Plahm's and Golden's testimony to be unsatisfactory to support Loder's assertion that defendant was the supplier of the cocaine.

Our supreme court has similarly noted that "corroborating" statements for a witness's testimony establishing the identity of a robbery defendant were not corroborating at all since they merely established *what* occurred as opposed to *who* was responsible. (*Wilson*, 66 Ill. 2d at 350.) In *Ash*, the court again rejected "corroborating" testimony which "described only certain events surrounding the crime but not who committed it." (*Ash*, 102 Ill. 2d at 493-94.) This court has similarly distinguished the "corroborating" testimony of identification in *Ash* from evidence found in a defendant's possession which estab-

lished his participation in a crime and corroborated an accomplice's testimony that defendant was a participant. (See *White*, 134 Ill. App. 3d at 275.) We held that evidence found in defendant's possession, including a pair of the victim's sunglasses with the defendant's fingerprints on them, coupled with the defendant's initial denial of involvement in the incident and subsequent admission that he went to the area, corroborated the accomplice's testimony identifying him as a perpetrator. 134 Ill. App. 3d at 275.

In the instant action, no evidence was discovered or offered by the State tying defendant to the drugs or the transaction. We know that Loder wanted to complete the transaction at the bowling alley where defendant would be. We know that defendant was in fact at the bowling alley. We further know that Loder was seen talking to defendant prior to the transaction. However, these observations do not establish defendant as the supplier of the drugs. For example, Plahm's testimony cannot be considered corroborating in that it is simply a repetition of what *Loder* told him. It is Loder's testimony which is suspect. Moreover, the statement does not identify defendant as the supplier, but rather merely indicates that Loder wanted to complete the transaction at a public location where defendant would be. Similarly, Golden's testimony established only that Loder talked to defendant. Golden did not hear the conversation and saw nothing change hands between the parties. Finally, no evidence was introduced establishing the ownership or the existence of the "unlocked car" from which the drugs allegedly came. In fact, there is nothing in the record which even ties defendant to any car at the bowling alley. Thus, we conclude that there was no corroboration for Loder's testimony that defendant supplied the drugs.

Accordingly, defendant's conviction must be reversed.

Reversed.

WOODWARD, J., concurs.

PRESIDING JUSTICE LINDBERG, dissenting:

My reading of this record discloses only one conflict in the evidence; that is, whether defendant was present in the bowling alley to *buy* drugs *from* Loder as agent Plahm testified defendant told him after his arrest and as defense counsel argued to the trial court, or was he there to *sell* drugs *to* Loder as Loder and the agents testified. Further, it appears that the trier of fact discounted any impeachment of Loder by reason of his statement, and its immediate retraction, that

he had not discussed a recommendation of sentencing leniency with the assistant State's Attorney. Finally, there was no impeachment of the MEG agents.

While it would always be preferable to have additional evidence such as drugs and money being exchanged in the presence of police agents, that element of the offense can be inferred, and thus proved, from the circumstances surrounding the buyer's contact with the seller. (*People v. Gilmer* (1969), 110 Ill. App. 2d 73, 249 N.E.2d 129.) Although the testimony of an accomplice must be viewed with suspicion, the uncorroborated testimony of an accomplice is sufficient to warrant conviction, and the fact that the accomplice himself is a criminal and expects leniency does not of itself raise a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267; *People v. Jackson* (1986), 145 Ill. App. 3d 626, 495 N.E.2d 1207.) Here, the accomplice's testimony was corroborated. Material corroboration of an accomplice's testimony is entitled to great weight. *People v. Brown* (1972), 51 Ill. 2d 271, 281 N.E.2d 682.

In *People v. Byas* (1982), 104 Ill. App. 3d 562, 432 N.E.2d 1226, the court observed that even if the testimony of the witness in that case was accorded the scrutiny of an accomplice's testimony, the great extent to which a defendant's own statements corroborated the details of the witness' testimony provided a sufficient indication of reliability to support a jury verdict of guilt. (*People v. Byas* (1982), 104 Ill. App. 3d 562, 570-71, 432 N.E.2d 1226.) When a defendant elects to justify or explain his presence at or near the scene of a crime, while denying participation, as did defendant here to the police after his arrest, he must tell a reasonable story or be judged by its improbabilities. *People v. Spagnolia* (1961), 21 Ill. 2d 455, 458, 173 N.E.2d 431.

I conclude that the circumstantial evidence established that the transaction, being a sale by defendant of cocaine to agent Plahm through the middleman Loder, took place even though there was no evidence of money or drugs being transferred directly to or from defendant at the scene; that is, the *corpus delicti* and defendant's guilt of the offense were proved beyond a reasonable doubt. *People v. Aldridge* (1960), 19 Ill. 2d 176, 179, 166 N.E.2d 563.

Accordingly, I would affirm the judgment of the circuit court of Du Page County finding defendant guilty.